# United States Court of Appeals for the Federal Circuit

---

**HONDA OF AMERICA MFG., INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-1493

---

Appeal from the United States Court of International Trade in case No. 05-00058, Senior Judge Thomas J. Aquilino, Jr.

---

Decided: June 2, 2010

---

JEREMY PAGE, Page Fura, P.C., of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was SHANNON E. FURA.

EDWARD F. KENNY, Trial Attorney, International Trade Field Office, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, and JEANNE E. DAVIDSON, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC. Of counsel on

the brief was MICHAEL W. HEYDRICH, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

————————————

Before MAYER, LINN, and DYK, *Circuit Judges.*

LINN, *Circuit Judge.*

Honda of America Manufacturing, Inc. ("Honda") appeals a final decision of the Court of International Trade ("CIT") affirming, on summary judgment, a Customs and Border Protection ("Customs") classification of Honda's oil bolts under the Harmonized Tariff Schedule of the United States ("Schedule" or "HTSUS"). *Honda of Am. Mfg., Inc. v. United States*, 625 F. Supp. 2d 1324 (Ct. Int'l Trade 2009). Because the CIT properly interpreted and applied the Schedule, we *affirm*.

## BACKGROUND

In 2002-2004, Honda imported "oil bolts" used in its cars and motorcycles. Pl.'s Compl. 2. These oil bolts feature a smooth upper portion with a hollow, threaded body, some of which have extended stems. The oil bolts connect fluid lines to brake master cylinders or transmission cases, allowing fluid to flow through without leaking. Honda's Principal Br. 5-8. Customs classified the oil bolts under Schedule subheading 7318.15.80: "Screws, bolts, nuts, . . . and similar articles, of iron or steel . . . [t]hreaded articles . . . [h]aving shanks or threads with a diameter of 6 mm or more." Customs Headquarters Ruling No. 966412 (Sept. 3, 2003), *aff'd*, Customs Headquarters Ruling No. 966789 (June 21, 2004). Customs liquidated at the corresponding 8.5% duty.

Honda appealed to the CIT, arguing that the proper classification is one of three subheadings in Schedule Chapter 87, "Vehicles . . . and Parts and Accessories Thereof."[1]  On Honda's motion, the CIT designated this case a test case for four others.  Both parties cross-moved for summary judgment.  The CIT granted the government's motion, holding that Customs correctly classified the oil bolts as "parts of general use," even though the bolts have specialized features, because the Schedule "does not generally make an exception for specialized parts." *Honda*, 625 F. Supp. 2d at 1327.  Honda appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

"We review the Court of International Trade's grant of summary judgment concerning tariff classifications *de novo*.  A classification decision involves two underlying steps: determining the proper meaning of the tariff provisions, which is a question of law; and then determining which heading the disputed goods fall within, which is a question of fact." *Outer Circle Prods. v. United States*, 590 F.3d 1323, 1325 (Fed. Cir. 2010) (citations omitted).  A Customs decision "is presumed to be correct."  28 U.S.C. § 2639(a)(1).

"The General Rules of Interpretation ('GRIs') govern classification of merchandise under the HTSUS," *Mille-*

---

[1]    Because Honda imported in 2002-2004, we use the June 30, 2004 supplemented edition of the Schedule. *See N. Am. Processing Co. v. United States*, 236 F.3d 695, 696 & n.2 (Fed. Cir. 2001) (noting for imports in 1992, "[a]ccordingly, all references to the HTSUS are to the 1992 edition"); Pl.'s Statement of Uncontested Facts ¶ 22 ("The provisions of the HTSUS that pertain to the classifications at issue in this action did not change during the period of 2002 through 2004, when the entries of the oil bolts that are the basis of this action occurred.").

*nium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009), and "are applied in numerical order," *ABB, Inc. v. United States*, 421 F.3d 1274, 1276 n.4 (Fed. Cir. 2005). General Rule 1 states that classification occurs "according to the terms of the headings and any relative section or chapter notes." Therefore, "a court first construes the language of the heading, and any section or chapter notes in question." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

"The terms of the HTSUS are construed according to their common commercial meanings." *Millenium Lumber*, 558 F.3d at 1329. Here, the plain language of the competing relevant subheadings is not dispositive. The oil bolts facially meet subheading 7318.15.80 because they are undisputedly "threaded articles" of iron or steel with a diameter of 6 mm or more. However, they also facially meet Honda's proposed subheadings because they are "parts and accessories" of vehicle power trains (subheading 8708.99.6790), of vehicle "brakes and servo-brakes" (subheading 8708.39.5050), and of motorcycles (subheading 8714.19.0060). Customs recognized that the oil bolt "is classifiable in heading 8708 by the fact that it is a part of a part for use in a motor vehicle . . . ." Customs Headquarters Ruling No. 966412, at 7.

However, the Section Notes in the Schedule clarify the relationship between these subheadings. According to the Schedule's Preface, "[t]he legal text of the [Schedule] includes all provisions enacted by Congress," including "Section and Chapter notes." Heading 7318 is in Chapter 73, which is in Section XV. Honda's proposed subheadings are in Chapter 87, which is in Section XVII. Note 2(b) to Section XVII states: "The expressions 'parts' and 'parts and accessories' do not apply to the following articles, whether or not they are identifiable as for the goods of this section: . . . [p]arts of general use, as defined in

note 2 to section XV." Note 2(a) to Section XV also explains: "Throughout the tariff schedule, the expression 'parts of general use' means . . . [a]rticles of heading . . . 7318 and similar articles of other base metals." Thus, reading these Notes together, as the CIT did, articles that are "parts of general use" under Chapter 73 cannot be classified as "parts" or "parts and accessories" under Chapter 87.

Honda challenges this interplay between Chapters 73 and 87, relying on the Explanatory Notes to Section XVII. 4 World Customs Org., *Harmonized Commodity Description and Coding System, Explanatory Notes* 1712-13 (3d ed. 2002) ("Explanatory Notes"). "Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Millenium Lumber*, 558 F.3d at 1329 (citation omitted). Here, General Explanatory Note III to Section XVII says that the headings in that section

> apply **only** to those parts or accessories which comply with **all three** of the following conditions:
> (a) They must not be excluded by the terms of Note 2 to this Section . . . . and
> (b) They must be suitable for use solely or principally with the articles of Chapters 86 to 88 . . . . and
> (c) They must not be more specifically included elsewhere in the Nomenclature . . . .

4 Explanatory Notes, *supra*, at 1712. Honda insists that its oil bolts meet condition (b) because they are suitable principally for use with vehicles listed in Chapter 87. However, the Explanatory Note requires an article to satisfy "all three" conditions, including condition (a): that it not be excluded "by the terms of Note 2 to this Section."

*See also id.* at 1739, 1745 (confirming that articles under headings 8708 and 8714 "must not be excluded by the provisions of the Notes to Section XVII"). As explained above, Note 2 to Section XVII excludes "[p]arts of general use." Therefore, parts of general use cannot be classified under Chapter 87, even if they are "suitable for use solely or principally" with articles in that chapter. Paragraph (C) of the Explanatory Note to Section XV reiterates this rule: "parts of general use (as defined in Note 2 to this Section) presented separately are *not* considered as parts of articles, but are classified in the headings of this Section appropriate to them." 3 Explanatory Notes, *supra*, at 1210. The Explanatory Note then offers an example: "in the case of . . . springs *specialised for motor cars* . . . [t]he springs would be classified in heading 73.20 (as springs) and not in heading 87.08 (as parts of motor vehicles)." *Id.* (emphasis added). Thus, an article's specialization for vehicles does not preclude its classification as a part of general use.

The Section Notes define "parts of general use" to include articles under heading 7318. Heading 7318 covers "[s]crews, bolts, nuts, coach screws, screw hooks, rivets, cotters, cotter pins, washers (including spring washers) and similar articles, of iron or steel." The CIT thus correctly observed that "the initial test for plaintiff's articles herein is whether the definition of screws, bolts and similar articles of iron or steel covers them." *Honda*, 625 F. Supp. 2d at 1327. If the oil bolts are parts of general use, then they cannot fall under Honda's proposed subheadings.

Within heading 7318, Customs chose subheading 7318.15.80. "[S]ubheading 7318.15.80 is necessarily limited to screws." *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1358 (Fed. Cir. 2001). The Ex-

planatory Notes to heading 7318 list physical traits of "screws, bolts and nuts":

- They are "threaded" and "used to assemble or fasten goods."

- "Bolts and screws for metal" are "cylindrical in shape, with a close and only slightly inclined thread," and "may have slotted heads or heads adapted for tightening with a spanner." This "includes all types of fastening bolts and metal screws regardless of shape and use."

- Screws are "more usually screwed into a hole tapped in the material to be fastened."

3 Explanatory Notes, *supra*, at 1270. Similarly, in "Distinguishing Bolts From Screws," a Customs Informed Compliance Publication of May 2000, Customs defined "screw" as "an externally threaded fastener capable of . . . mating with a preformed internal thread . . . and of being tightened or released by torquing the head." We affirmed this definition in *Rocknel Fastener*, noting its basis in "an authoritative industry source that is generally consistent with the dictionary definitions." 267 F.3d at 1358, 1361.

Determining whether the oil bolts fall within subheading 7318.15.80 is a factual question, *Outer Circle*, 590 F.3d at 1325, but there are no material disputes of fact here. Honda's oil bolts mate with preformed holes, perform a fastening function, and are tightened by torquing their heads, thereby meeting the established definition for "screw"—despite their "bolt" moniker. Honda conceded before the CIT that its oil bolts "consist of partially-threaded hex head articles of steel, which are torqued by a head into a preformed hole with one of their functions

being to fasten both the oil bolt and the hose assembly to either a brake master cylinder or transmission case." Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. 2. Thus, there is no dispute that the oil bolts have the characteristics for subheading 7318.15, "Other screws and bolts, whether or not with their nuts or washers." Nor does Honda dispute that the oil bolts feature "shanks or threads with a diameter of 6 mm or more," which places them specifically under subheading 7318.15.80. *See Honda*, 625 F. Supp. 2d at 1328.

Honda insists that its oil bolts are not for "general use" because they "do not function solely in a fastening capacity," but also conduct fluids and prevent leakage. Honda's Reply Br. 5-6. However, the Explanatory and Section Notes do not restrict heading 7318 to items "whose <u>sole</u> function is to fasten," as Honda claims. *Id.* 5. Rather, the Explanatory Notes to Chapter 73 clarify that "bolts and screws for metal" include "all types of fastening bolts and metal screws *regardless of shape and use*" (emphasis added).

Honda also claims that Customs' decision deserves less deference because it conflicts with previous rulings involving heading 7318. *See Warner-Lambert Co. v. United States*, 425 F.3d 1381, 1384 (Fed. Cir. 2005) (noting that deference to Customs depends partly on "its consistency with earlier and later pronouncements," according to *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Those rulings are distinguishable. Honda cites Customs New York Ruling No. F88921 (July 7, 2000), where Customs classified a "steel washer" under heading 8708 instead of heading 7318. Customs found, however, that "[t]he design features of this washer do not appear to have the characteristics of 'parts of general use' washers" under heading 7318. *Id.* This ruling therefore followed the principle that articles are classifiable under Chapter

87 only if they are *not* parts of general use. Similarly, in Customs Headquarters Ruling No. H007106 (May 8, 2007), Customs placed a "plastic dryer timer knob" under heading 8451 because "[k]nobs are not described in Note 2 to Section XV, HTSUS, as parts of general use nor are they similar to any of the articles mentioned therein." It noted that the knobs were used "solely or principally with dryers" of subheadings in Chapter 84, but recognized that if the knobs *were* parts of general use, they would be "excluded from classification in Chapter 84." *Id.* Finally, in Customs Headquarters Ruling No. 954102 (Mar. 15, 1994), "control cables" with features that "dedicate them for use in vehicles" were classified under heading 8709, not as parts of general use. However, the contemporary Explanatory Notes to Chapter 73 stated that cables were parts of general use "provided they do not thereby assume the character of articles of other headings." *Id.* Thus, the Notes specifically exempted the cables from Chapter 73, while the Notes applicable here do not exempt oil bolts. The CIT also noted that, at the time Ruling No. 954102 issued, Customs was reconsidering the scope of heading 8709 and its application to a cable, but not to a "screw, bolt, or the like." *Honda*, 625 F. Supp. 2d at 1329-30. Honda's citation of other allegedly inconsistent rulings is similarly unpersuasive. Consistency with earlier and later pronouncements "cannot be read as precluding any deference to an agency ruling that has the power to persuade, solely because it is inconsistent with an earlier one." *Warner-Lambert*, 425 F.3d at 1386.

Finally, Honda argues that General Rule of Interpretation 3 requires that Chapter 87 headings apply because they are more specific than those in Chapter 73. Rule 3 applies to tiebreakers: when goods are, "*prima facie*, classifiable under two or more headings," the heading with "the most specific description" (Rule 3(a)), the head-

ing that covers the goods' "essential character" (Rule 3(b)), or "the heading which occurs last in numerical order" (Rule 3(c)) governs. The government correctly responds that Rule 3 does not apply because there is no tie to break. Under Rule 1, which starts with the headings and "relative section or chapter notes," the oil bolts are not prima facie classifiable under any Chapter 87 headings.

## CONCLUSION

For the foregoing reasons, we *affirm* the CIT's grant of summary judgment that Customs properly classified Honda's oil bolts under Schedule subheading 7318.15.80.

## AFFIRMED