# United States Court of Appeals for the Federal Circuit

---

**THE CONTAINER STORE,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2016-1666

---

Appeal from the United States Court of International Trade in No. 1:09-cv-00327-MAB, Judge Mark A. Barnett.

---

Decided: July 18, 2017

---

ROBERT B. SILVERMAN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, New York, NY, argued for plaintiff-appellant. Also represented by ALAN R. KLESTADT, ROBERT FLEMING SEELY.

MARCELLA POWELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by AMY RUBIN, JEANNE E. DAVIDSON, BENJAMIN C. MIZER; PAULA S. SMITH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

---

Before NEWMAN, MAYER, and O'MALLEY, *Circuit Judges.*

MAYER, *Circuit Judge.*

The Container Store appeals the final judgment of the United States Court of International Trade ("Trade Court") granting the government's motion for summary judgment and concluding that imported elfa® top tracks and hanging standards were properly classified under subheading 8302.42.30 of the Harmonized Tariff Schedule of the United States ("HTSUS") as "[b]ase metal mountings, fittings and similar articles suitable for furniture." *See Container Store v. United States*, 145 F. Supp. 3d 1331, 1348–49 (Ct. Int'l Trade 2016) ("*Container Store II*"). Because we conclude that the subject imports should instead be classified under HTSUS subheading 9403.90.80 as parts of unit furniture, we reverse and remand.

## BACKGROUND

The Container Store's top tracks and hanging standards are two components of its elfa® modular storage and organization system. *See id.* at 1333. Consumers can assemble the different components of this system "in a variety of configurations to create a customized, modular storage unit." *Id.* The top tracks and hanging standards, which are made of epoxy-bonded steel, *see id.*, "serve as the frame or support structure in a complete elfa® system," *id.* at 1344.

A top track has a flat back and is designed to be affixed horizontally, using screws or anchors, to a vertical surface such as a door or a wall. It has top and bottom edges that "protrude and respectively bend downward and upward to form the track's upper and lower lips." *Id.* at 1333. A hanging standard, which has an open back and a flat front with rows of evenly spaced slots, is suspended

vertically "from a top track by means of notches on the top end of the standard that slide into the top track's lower lip." *Id.* Consumers can attach various additional elfa® components, such as baskets, drawers, and shelves, to the hanging standards. *Id.* at 1334. The top tracks and hanging standards are designed to be used only with other elfa® system components. *Id.*

The Container Store imported the elfa® top tracks and hanging standards through the Port of Houston, Texas, in October 2007 and January 2008. *See id.* U.S. Customs and Border Protection ("Customs") liquidated the subject merchandise under subheading 8302.41.60, a provision for base metal mountings and fittings suitable for buildings. The Container Store filed timely protests challenging Customs' classification, arguing that the subject merchandise should instead be classified under subheading 9403.90.80 as parts of furniture. Customs denied these protests, relying on a prior Customs ruling that had been issued to The Container Store. *See* Cust. B. & Dec. HQ 967149, 2004 U.S. CUSTOM HQ LEXIS 411, at *1 (Nov. 2, 2004) ("HQ 967149"). In that prior ruling, Customs held that the elfa® top tracks and hanging standards at issue were properly classified under subheading 8302.41.60 as mountings suitable for buildings. *Id.* at *11, *20–21. In declining to classify the merchandise under subheading 8302.42.30 as mountings suitable for furniture, Customs explained that "the top tracks and hanging standards are not accessory items to be used with furniture," but "[i]nstead . . . form the structure of the furniture." *Id.* at *17. Customs further explained that "[s]tructural elements of furniture are not mountings and fittings suitable for furniture" and therefore cannot be classified under subheading 8302.42.30. *Id.* The Container Store then appealed to the Trade Court, which placed the appeal on its reserve calendar pending resolution of another appeal filed by The Container Store involving identical merchandise. *See Container Store v.*

*United States*, 800 F. Supp. 2d 1329 (Ct. Int'l Trade 2011) ("*Container Store I*").

In *Container Store I*, Judge Ridgway granted The Container Store's motion for summary judgment, concluding that the elfa® top tracks and hanging standards at issue were properly classified under subheading 9403.90.80 as parts of unit furniture. *Id.* at 1336–38. Relying on this court's decision in *storeWALL, LLC v. United States*, 644 F.3d 1358 (Fed. Cir. 2011), Judge Ridgway determined that the elfa® organization and storage system, like the storeWALL organization and storage system, "constitutes 'unit furniture,' because it consists of components that are fitted together with other pieces to form a larger system, it is designed to be hung on or fixed to a wall, and it is assembled together so as to suit specific individual consumers' particular needs to organize and store various objects or articles." *Container Store I*, 800 F. Supp. 2d at 1337. She emphasized, moreover, that "it is the very versatility and adaptability of systems such as the elfa® system and the storeWALL system that render them unit furniture and distinguish them from the run-of-the-mill coat, hat and similar racks that are specifically excluded from classification as furniture." *Id.* at 1338 (citations and internal quotation marks omitted). According to Judge Ridgway, because the metal elfa® top tracks and hanging standards, like the plastic wall panels and locator tabs at issue in *storeWALL*, are "dedicated solely for use with a completed" unit furniture system, they are properly classified as parts of unit furniture under heading 9403.[1] *Id.* (citations and internal quotation marks omitted).

---

[1] The government subsequently appealed Judge Ridgway's decision to classify the elfa® top tracks and hanging standards under subheading 9403.90.80, but later abandoned its appeal.

Judge Barnett reached a different conclusion with respect to the classification of the elfa® top tracks and hanging standards at issue in the present appeal. *See Container Store II*, 145 F. Supp. 3d at 1348–49. Judge Barnett acknowledged that this court, in *storeWALL*, 644 F.3d at 1363–64, held that the plastic wall panels and locator tabs used in the storeWALL modular storage system were properly classified under heading 9403 as parts of unit furniture. *See Container Store II*, 145 F. Supp. 3d at 1340–41. He further acknowledged that the "elfa® top [tracks] and hanging standards are functionally equivalent to the storeWALL system." *Id.* at 1344 (footnote omitted). Judge Barnett noted, however, that "Chapter 94 Note 1(d) excludes parts of general use from Chapter 94, while Section XV Note 2(c) specifically places parts of general use into heading 8302, HTSUS." *Id.* at 1346. In Judge Barnett's view, because the elfa® top tracks and hanging standards are parts of general use, they are properly classified under heading 8302 and excluded from heading 9403. *Id.* at 1349.

The Container Store then appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

I.

We review the grant of summary judgment by the Trade Court de novo. *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1290 (Fed. Cir. 2008); *Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001). The proper interpretation of HTSUS headings and subheadings is a question of law, reviewed without deference. *Drygel, Inc. v. United States*, 541 F.3d 1129, 1133 (Fed. Cir. 2008); *see also Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (emphasizing that "this court has an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms").

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). Classification of merchandise under the HTSUS is guided by the principles set forth in the General Rules of Interpretation. *See Millenium Lumber Distribution Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). These rules are applied in numerical order, and if a particular rule resolves the classification issue, there is no need to examine subsequent rules. *See CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011). Under General Rule of Interpretation 1, a court must determine the appropriate classification for merchandise "according to the terms of the headings and any relative section or chapter notes." *See Millenium*, 558 F.3d at 1328–29. "HTSUS terms are construed according to their common and commercial meanings, which are presumed to be the same absent contrary legislative intent." *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).

## II.

The dispute here centers on whether the subject imports are properly classifiable under HTSUS subheading 8302.42.30 as mountings and fittings suitable for furniture or under HTSUS subheading 9403.90.80 as parts of furniture.[2] Subheading 8302.42.30 covers:

> 8302 Base metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat racks,

---

[2]    Subheading 8302.42.30 carries a 3.9% duty, whereas subheading 9403.90.80 is a duty-free provision.

> hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof:
>
>> 8302.42 Other, suitable for furniture:
>>
>>> 8302.42.30 Of iron or steel, of aluminum or of zinc.

HTSUS subheading 9403.90.80 covers:

9403 Other furniture and parts thereof:

> 9403.90 Parts:
>
>> 9403.90.80 Other.

In *storeWALL,* we defined "unit furniture," for purposes of heading 9403, as an article:

> (a) fitted with other pieces to form a larger system or which is itself composed of smaller complementary items, (b) designed to be hung, to be fixed to the wall, or to stand one on the other or side by side, and (c) assembled together in various ways to suit the consumer's individual needs to hold various objects or articles, but (d) exclud[ing] other wall fixtures such as coat, hat and similar racks, key racks, clothes brush hangers, and newspaper racks.

644 F.3d at 1361 (citations and internal quotation marks omitted); *see also id.* at 1363.

The government acknowledges that "[t]he elfa® system facially satisfies this definition as it consists of vari[ous] pieces that form a larger storage or organizational system that is designed to be hung on a wall and assembled in various ways to suit the consumer's needs." It argues, however, that because the elfa® top tracks and

hanging standards are "parts of general use" and such parts are excluded from the scope of heading 9403,[3] they cannot be classified under heading 9403 but must instead be classified under heading 8302.

The Container Store does not dispute that parts of general use covered by heading 8302 are excluded from the scope of heading 9403. It asserts, however, that the elfa® top tracks and hanging standards are not parts of general use because they are essential structural components of the elfa® system. It further contends that because the elfa® top tracks and hanging standards, like the plastic locator tabs and wall panels at issue in *store-WALL*, 644 F.3d at 1363–64, are components of a unit furniture system, they are properly classified as parts of unit furniture under heading 9403.

We agree with The Container Store. In concluding that the elfa® top tracks and hanging standards constitute parts of general use, the Trade Court failed to give due consideration to Explanatory Note 83.02, which provides pertinent guidance as to the merchandise covered by heading 8302. *See* World Cust. Org., Harmonized Commodity Description & Coding Sys. Explanatory Notes, Explanatory Note 83.02. "The World Customs Organization's Explanatory Notes that accompany each Chapter of the HTSUS, while not legally binding, are persuasive and are generally indicative of the proper interpretation of the

---

[3] Note 1(d) to Chapter 94 states, in relevant part, that the chapter does not include "[p]arts of general use as defined in note 2 to section XV." Note 2 to section XV, which covers articles of base metal, states that the phrase "[p]arts of general use" includes "[a]rticles of heading . . . 8302." Read together, these notes indicate that if items are parts of general use covered by heading 8302, they cannot be classified in heading 9403. *See Container Store II*, 145 F. Supp. 3d at 1345–46.

tariff provision." *Lemans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011) (citations and internal quotation marks omitted); *see also Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1360 (Fed. Cir. 2001) (explaining that the Explanatory Notes were "prepared by the World Customs Organization to accompany the international harmonized schedule"). Explanatory Note 83.02 states:

> [Heading 8302] covers general purpose classes of base metal accessory fittings and mountings such as are used largely on furniture, doors, windows, coachwork, etc. Goods within such general classes remain in this heading even if they are designed for particular uses (e.g., door handles or hinges for automobiles). The heading *does not*, however, *extend* to goods forming an essential part of the structure of the article, such as window frames or swivel devices for revolving chairs.

This provision draws a sharp distinction between "general purpose . . . accessory fittings and mountings," which fall within the scope of heading 8302 and "goods forming an essential part of the structure of [an] article," which do not. The top tracks and hanging standards provide the indispensable structural framework for the elfa® modular storage unit, and without them the system could not hang from a vertical surface. *See Container Store II*, 145 F. Supp. 3d at 1334 (explaining that the top tracks and hanging standards "serve as the frame or support structure in a complete elfa® system"); *see also Container Store I*, 800 F. Supp. 2d at 1332 (stating that the "[t]op tracks and hanging standards are the core components of the elfa® system" and "serve as the 'backbone' of [that] system"). Because the subject imports are essential structural components of the elfa® modular storage unit, they are excluded from heading 8302. *See* HQ 967149, 2004 U.S. CUSTOM HQ LEXIS 411, at *17 (explaining that elfa® top tracks and hanging standards

cannot properly be classified in subheading 8302.42.30 because they are "*structural elements* of the shelving unit" (emphasis added)).

A review of the products listed in Explanatory Note 83.02 reinforces our conclusion that heading 8302 does not cover the subject merchandise. Explanatory Note 83.02 states that items "such as" swivel devices for revolving chairs and frames for windows, which "form[] an essential part of the structure of [an] article," are excluded from heading 8302. A swivel device, which is integrated between the base and the seat of a revolving chair, is part of the framework of the chair and allows it to rotate. A window frame holds and positions the window glass. The elfa® top tracks and hanging standards are analogous to these products. Just as a swivel device is an indispensable skeletal component of a revolving chair and a window frame is an indispensable skeletal component of a completed window assembly, the top tracks and hanging standards are essential skeletal components of an elfa® modular storage unit. *See, e.g.*, *Lemans*, 660 F.3d at 1320–22 (analyzing a list of examples provided in the Explanatory Notes in interpreting the term "sports equipment"); *Totes, Inc. v. United States*, 69 F.3d 495, 499–501 (Fed. Cir. 1995) (considering the examples listed in the Explanatory Notes when determining the proper classification for automobile "trunk organizers").

## III.

As the government correctly points out, Explanatory Notes may not be deployed to contravene the plain meaning of a tariff provision. *See Airflow Tech.*, 524 F.3d at 1293 ("[W]hen the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, we do not afford [the Explanatory Notes] any weight." (citations and internal quotation marks omitted) (second alteration in original)). According to the government, the language of Explanatory Note 83.02 which excludes

"goods forming an essential part of the structure of [an] article" from the scope of heading 8302 should be disregarded because it "conflict[s] with the actual terms of that heading by removing goods that are indisputably classified there." In support, the government argues that door hinges and door knobs are classifiable in heading 8302, notwithstanding the fact that both hinges and knobs are "essential to doors."

This argument fails. Explanatory Note 83.02 does not exclude from heading 8302 any mounting or fitting "essential" to an article, but instead excludes only those mountings and fittings that "form[] an essential part of the structure of the article." While a hinge or a knob may be essential to the operation of a door, they are not essential parts of the structure of the door itself. Items such as hinges and knobs are attached to, or placed on, a door. By contrast, the top tracks and hanging standards actually create the structure of the elfa® modular storage unit. Without them, the elfa® system would not exist. *See* HQ 967149, 2004 U.S. CUSTOM HQ LEXIS 411, at *17 (explaining that "the top tracks and hanging standards are not accessory items to be used with furniture," but "[i]nstead . . . form the structure of the furniture").

## IV.

*Honda of America Manufacturing, Inc. v. United States*, 607 F.3d 771 (Fed. Cir. 2010), upon which the government relies, is inapposite. There the issue was whether the Trade Court erred in concluding that imported oil bolts were classifiable as "parts of general use"—more specifically, as screws—under HTSUS subheading 7318.15.80 rather than as parts of motor vehicles under Chapter 87. *Id.* at 774–75. The importer conceded that the oil bolts had the fastening characteristics of metal screws, but argued that they were not parts of general use because they did "not function solely in a fastening capacity, but [instead] also conduct[ed] fluids and prevent[ed]

leakage." *Id.* at 775 (citations and internal quotation marks omitted). We rejected this argument, however, explaining that the relevant "Explanatory and Section Notes [did] not restrict heading 7318 to items whose sole function is to fasten," but instead clarified that the heading "include[s] all types of fastening bolts and metal screws *regardless of shape and use.*" *Id.* (citations and internal quotation marks omitted). We further explained that because the oil bolts were properly classified as parts of general use under heading 7318, they could not be classified as parts of motor vehicles under Chapter 87. *Id.* at 774–76.

The situation here is readily distinguishable from that presented in *Honda.* Heading 7318, the "parts of general use" tariff provision at issue in *Honda*, specifically included "screws" and the importer conceded that its oil bolts functioned as screws. *Id.* at 775. Furthermore, as discussed above, the relevant Explanatory Notes clarified that heading 7318 covered all types of screws, regardless of use. *See id.* Here, by contrast, Explanatory Note 83.02 makes clear that while heading 8302 covers "base metal accessory fittings and mountings such as are used largely on furniture," it does not extend to essential structural parts.

## V.

In *storeWALL*, we concluded that plastic components of a home storage and organization system were properly classified under heading 9403 as parts of unit furniture. 644 F.3d at 1363–64. At issue there were "locator tabs," which were used to affix the system to a wall, and wall panels, which rested upon the locator tabs. *Id.* at 1360. Consumers then had the option of attaching various additional components, such as shelves, baskets, and hooks, to the wall panels in order "to create a customized storage or display unit." *Id.*

In concluding that the storeWALL system constituted "unit furniture," we explained that "[t]he fact that the end user has the option with the storeWALL system to add or subtract accessories is the very reason any such system is unit furniture," and that "[e]ven if equipped only with hooks, the . . . system retains the essential versatility and adaptability that is the very essence of unit furniture." *Id.* at 1364. We further concluded that "because both the wall panels and . . . locator tabs are dedicated solely for use with a completed storeWALL system, and such a system is unit furniture, the Court of International Trade clearly erred by not classifying the products as 'parts' of unit furniture under [s]ubheading 9403.90.50, HTSUS." *Id.* (footnote omitted).

A similar analysis applies here.[4] The elfa® system constitutes "unit furniture" because it is designed to be

---

[4] Contrary to The Container Store's assertions, however, *stare decisis* did not compel the Trade Court to classify the elfa® top tracks and hanging standards in heading 9403. "*Stare decisis* . . . is limited to only the legal determinations made in a prior precedential opinion and does not apply to either issues of fact, such as classification of specific goods within a construed tariff provision, or issues of law that were not part of a holding in a prior decision." *Deckers Corp. v. United States*, 752 F.3d 949, 956 (Fed. Cir. 2014). In *storeWALL*, 644 F.3d at 1363–64, we concluded that plastic components of a home storage system should be classified as parts of unit furniture under subheading 9403.90.50 rather than as "[o]ther articles of plastics" under subheading 3926.90.98. We did not, however, resolve the precise issue presented here, which is whether metal top tracks and hanging standards should be classified as metal mountings and fittings suitable for furniture under subheading 8302.42.30 or instead as parts of unit furniture under subheading

hung on a wall, is "fitted with other pieces to form a larger system," and can be "assembled together in various ways to suit the consumer's individual needs to hold various objects or articles." *Id.* at 1361 (citations and internal quotation marks omitted). Given that the top tracks and hanging standards are designed exclusively for the elfa® unit furniture system, they are properly classified as parts of unit furniture under HTSUS subheading 9403.90.80. *See Container Store II*, 145 F. Supp. 3d at 1334 ("By design, consumers may only use top tracks and hanging standards with other elfa® system components.").

CONCLUSION

Accordingly, the judgment of the Court of International Trade is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.

---

9403.90.80. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (explaining that *stare decisis* applies where an issue was "squarely addressed" in a prior opinion).