# United States Court of Appeals for the Federal Circuit

2008-1101

DRYGEL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Casey K. Richter, Neville Peterson LLP, of Washington, DC, argued for plaintiff-appellant.  With him on the brief were John M. Peterson and George W. Thompson.

Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee.  With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director.  Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from:  United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

2008-1101

DRYGEL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 03-00832, Senior Judge Nicholas Tsoucalas.

_____

DECIDED:  September 9, 2008

_____

Before RADER and SCHALL, Circuit Judges, and ILLSTON, District Judge.[*]

SCHALL, Circuit Judge.

This case involves the tariff classification of Gel-A-Mint MagikStrips®, a breath-freshening product imported into the United States by Drygel, Inc. ("Drygel").  Drygel appeals the decision of the United States Court of International Trade granting the United States' ("the government's") cross-motion for summary judgment that the United States Bureau of Customs and Border Protection ("Customs") correctly classified the MagikStrips at a 6.4% duty rate under subheading 2106.90.99 of the Harmonized Tariff Schedule of the United States ("HTSUS"), a catchall provision that provides for "Food

---

[*]    Honorable Susan Y. Illston, District Judge, United States District Court for the Northern District of California, sitting by designation.

preparations not elsewhere specified or included: . . . Other." Drygel, Inc. v. United States, 507 F. Supp. 2d 1371, 1380 (Ct. Int'l Trade 2007). The court denied Drygel's cross-motion for summary judgment that the MagikStrips are more specifically provided for under HTSUS subheading 3306.90.00, a duty-free provision that encompasses "Preparations for oral or dental hygiene . . . Other." Id. Because the court erred in denying Drygel's cross-motion for summary judgment, we reverse.

BACKGROUND

I.

Drygel's MagikStrips are thin, sugar-free, flavored strips of consumable material that dissolve when placed on the tongue. The MagikStrips are manufactured in Japan, and are packaged in small plastic containers for sale at retail stores. Id. at 1373. Customs liquidated the imported MagikStrips under subheading 2106.90.99, a catchall provision applicable to "Food preparations not elsewhere specified or included: . . . Other." Drygel challenged that classification in the Court of International Trade, arguing that the MagikStrips should be classified as "Preparations for oral or dental hygiene . . . Other" under subheading 3306.90.00.

II.

We previously addressed the scope of subheading 3306.90.00 in Warner-Lambert Co. v. United States, 407 F.3d 1208 (Fed. Cir. 2005). There, the Court of International Trade affirmed the determination by Customs to Classify Warner-Lambert's imported Certs® "Powerful Mints" under subheading 2106.90.99. Warner-Lambert Co. v. United States, 343 F. Supp. 2d 1315, 1322 (Ct. Int'l Trade 2004). The court rejected Warner-Lambert's argument that the Certs Powerful Mints were

classifiable under subheading 3306.90.00 as "preparations for oral or dental hygiene." In doing so, the court first determined that the term "hygiene" related to "the preservation of health." Id. at 1320. Next, relying on a Food and Drug Administration ("FDA") monograph entitled "Over-the-Counter Oral Health Care and Discomfort Drugs: Establishment of a Monograph," 47 Fed. Reg. 22,760 (May 25, 1982) ("FDA monograph"), the court determined that only products achieving an antimicrobial effect contributed to oral health, Warner-Lambert, 343 F. Supp. 2d at 1320. The court focused in particular on the statement in the FDA monograph that "[b]ecause oral malodor is caused mainly by gram-negative anaerobes, only antimicrobial ingredients known to be effective against the causative organisms are effective in suppressing the malodor." Id. (quoting FDA monograph at 22,844). Because it was undisputed that the Certs Powerful Mints did not contain any antimicrobial agents, the court concluded that they could not be classified under subheading 3306.90.00. Id.

On appeal, we concluded that the Court of International Trade's interpretation of subheading 3306.90.00 was too restrictive. Warner-Lambert, 407 F.3d at 1210. Specifically, we determined that nothing in the FDA monograph, or in the dictionaries consulted by the court, required the connection of "hygiene" with "health." We also observed that the court's interpretation was contradicted by two relevant explanatory notes. First, the explanatory note to chapter 33 provides that the products of heading 3306 need not "contain subsidiary pharmaceutical or disinfectant constituents," nor be held out "as having therapeutic or prophylactic value." Id. Second, the explanatory note to heading 3306 provides that the heading encompasses "[m]outh washes and oral

perfumes." Id. Thus, we concluded that "the Court of International Trade went too far in requiring that a product under Heading [3306] include an antimicrobial agent." Id.

Finally, we pointed out some of the characteristics of Certs Powerful Mints that made classification within heading 3306 appropriate. Specifically, we noted that the mints contained (1) certain flavors that masked malodor, (2) copper gluconate that breaks down odor-producing volatile compounds, and (3) cottonseed oil that absorbs odor-producing volatile compounds. Id. at 1208, 1210. In addition, we noted that consumption of the mints increased salivation, thereby purging bacteria located in the oral cavity. Id. Based upon our analysis, we held that Certs Powerful Mints "properly fall under heading [3306] of the HTSUS." Id. at 1211. We therefore reversed the decision of the Court of International Trade granting summary judgment in favor of the United States. Id.

### III.

In this case, the Court of International Trade was presented with cross-motions for summary judgment. The government moved for summary judgment that the MagikStrips are not prima facie classifiable under HTSUS subheading 3306.90.00 and, thus, that they properly fall within the catchall subheading 2106.90.99 that was applied by Customs. The government argued that our decision in Warner-Lambert stood for the proposition that in order for products to be classified as "preparations for oral or dental hygiene," the products "must be able to achieve the breakdown and absorption of unwanted substances in the mouth and provide a cleansing effect by purging activity." Drygel, 507 F. Supp. 2d at 1376. In other words, the government argued that only products with all of the same cleansing characteristics as the Certs Powerful Mints in

Warner-Lambert can be classified as "preparations for oral or dental hygiene" under subheading 3306.90.00. The government contended that summary judgment was appropriate because Drygel failed to adduce sufficient evidence with respect to the breakdown, absorption, and purging activity—if any—of its imported MagikStrips.

Drygel responded that summary judgment for the government was not proper, contending that its evidence raised genuine issues of material fact with respect to (1) whether the MagikStrips contain antimicrobial ingredients and (2) whether the Magikstrips contain ingredients that achieve breakdown, absorption, and purging effects discussed in Warner-Lambert. In addition, however, Drygel argued that the government misinterpreted the holding of Warner-Lambert. According to Drygel, we merely held in Warner-Lambert that the breakdown, absorption, and purging effects of Certs Powerful Mints were sufficient to bring their classification within subheading 3306.90.00; we did not hold that they are necessary conditions for classification within that subheading.

Finally, Drygel affirmatively moved for summary judgment that the imported MagikStrips are classifiable within subheading 3306.90.00 because they are "oral perfumes." Drygel argued that summary judgment in its favor was appropriate because (1) as a matter of law, subheading 3306.90.00 encompasses "oral perfumes" and (2) there was no genuine issue of material fact with respect to whether the MagikStrips are, at a minimum, "oral perfumes."

The Court of International Trade denied Drygel's cross-motion for summary judgment and granted the government's. The court rejected Drygel's argument that HTSUS heading 3306 encompasses "oral perfumes." According to the court, although our Warner-Lambert decision noted the reference to "[m]outh washes and oral

perfumes" in the explanatory note to heading 3306, our holding ultimately relied upon the cleansing properties of Certs Powerful Mints. Id. at 1379. Further, the court observed that the explanatory notes are merely a "non-binding interpretive guide." Id. Thus, the court concluded that Warner-Lambert "instructs that the term 'hygiene' requires a cleansing action such as the 'breakdown and absorption function' and 'cleansing effect of the purging activity' of Certs® Powerful Mints." Id. The court determined that Drygel had not established a genuine issue of material fact with respect to whether the MagikStrips accomplish the requisite cleansing action—i.e., whether the MagikStrips are antimicrobial or achieve a breakdown, absorption, and purging effect. Id. The court discounted Drygel's evidence in that regard as either self-serving, irrelevant, or conclusory. Id. Accordingly, the court entered summary judgment in favor of the government that the MagikStrips were properly classified by Customs in HTSUS subheading 2106.90.99.

DISCUSSION

I.

We have jurisdiction over Drygel's appeal pursuant to 28 U.S.C. § 1295(a)(5). We review de novo the Court of International Trade's rulings on summary judgment. Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1290 (Fed. Cir. 2008); Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001). The interpretation of the headings and subheadings of the HTSUS is a question of law reviewed without deference. MetChem, Inc. v. United States, 513 F.3d 1342, 1345 (Fed. Cir. 2008); Home Depot U.S.A., Inc. v. United States, 491 F.3d 1334, 1335 (Fed. Cir. 2007).

On appeal, Drygel contends that the Court of International Trade misinterpreted the holding of Warner-Lambert as requiring imported products to achieve a cleansing action—e.g., breakdown, absorption, and purging—in order to be classified within heading 3306. According to Drygel, Warner-Lambert stands for the proposition that breakdown, absorption, and purging activities are sufficient, but not necessary, conditions for classification within that heading. Drygel argues that "preparations for oral or dental hygiene" includes "oral perfumes" and that, at a minimum, its MagikStrips are useful for masking oral malodors. Thus, Drygel contends that the court erred in denying its motion for summary judgment that the MagikStrips should be classified within subheading 3306.90.00. In addition, Drygel argues that summary judgment for the government was improper even under the court's more restrictive interpretation of "preparations for oral or dental hygiene." That is because, according to Drygel, there were genuine issues of fact with respect to whether certain ingredients in its MagikStrips achieved a breakdown, absorption, and purging effect.

The government responds that the Court of International Trade correctly interpreted Warner-Lambert. That is, the government contends that Warner-Lambert requires an imported product to have cleansing characteristics—such as breakdown, absorption, and purging—in order to be classified within heading 3306 as a "preparation for oral or dental hygiene." According to the government, the non-binding explanatory notes cannot expand the scope of heading 3306 to encompass all "oral perfumes" regardless of whether they exhibit the requisite cleansing characteristics. Further, the government argues that the evidence adduced by Drygel did not create a genuine issue of fact regarding whether the ingredients of the MagikStrips achieved breakdown,

absorption, or purging at their respective concentrations. Like the Court of International Trade, the government discounts the evidence that Drygel introduced on that point as "self-serving" or "conclusory." Thus, the government argues that the court did not err in granting its motion for summary judgment and denying Drygel's.

## II.

We agree with Drygel that the Court of International Trade's interpretation of Warner-Lambert was too restrictive. The Certs Powerful Mints at issue in that case were marketed as a product to freshen the breath by controlling oral malodor. Warner-Lambert, 407 F.3d at 1208. As explained above, we held that the term "hygiene" in HTSUS heading 3306 does not require antimicrobial agents, and that the cleansing properties—i.e., breakdown, absorption, and purging effects—of the Certs Powerful Mints were sufficient for their classification under that heading. Id. at 1210. We did not hold that products lacking the same cleansing properties could not be classified there. Warner-Lambert thus did not set forth the exclusive criteria for classification within heading 3306. Indeed, we expressly noted in Warner-Lambert that our decision was informed by the broader notion of "preparations for oral or dental hygiene" set forth in the explanatory notes.

> The Explanatory Note to Heading [3306] further specifies that the heading encompasses "[m]outh washes and oral perfumes." Therefore, the Notes accompanying this heading do not require antimicrobial agents in "preparations for oral or dental hygiene." To the contrary, the Notes expressly encompass "oral perfumes" within the heading. In sum, the Court of International Trade went too far in requiring that a product under Heading [3306] include an antimicrobial agent.

Id. (internal citation omitted).

At the same time, however, we did not hold in Warner-Lambert that all "oral perfumes" are prima facie classifiable within heading 3306. Although we observed that

the Certs Powerful Mints were effective as an "oral perfume," id. at 1208 (noting that the mints "contain[ed] flavors that mask malodor"), we specifically highlighted the additional cleansing properties of the mints in holding that they were "preparations for oral or dental hygiene" within heading 3306, id. at 1210–11. In other words, we did not rely solely upon the mints' status as an "oral perfume" in concluding that they fell within heading 3306, and thus, Warner-Lambert does not necessarily compel the conclusion that all "oral perfumes" are prima facie classifiable within that heading. Nevertheless, there is no doubt that in Warner-Lambert we consulted the explanatory notes' reference to "oral perfumes" in determining the scope of heading 3306, and the government has not convinced us to disregard it here.

We recognize, as did the Court of International Trade, that the explanatory notes are not legally binding. Degussa Corp. v. United States, 508 F.3d 1044, 1047 (Fed. Cir. 2007). The notes are persuasive, however, and we have stated that they are "generally indicative" of the proper interpretation of a tariff provision. Id.; Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999) (citing H.R. Rep. No. 100-576, 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582). Thus, in past cases we have credited the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it. See, e.g., Agfa Corp. v. United States, 520 F.3d 1326, 1330 (Fed. Cir. 2008); BASF Corp. v. United States, 497 F.3d 1309, 1315–16 (Fed. Cir. 2007).

The government argues the explanatory notes must at least be interpreted in view of the heading itself. That is, the government contends that any "oral perfume" classifiable within the scope of heading 3306 must also exhibit the type of cleansing action recognized in Warner-Lambert because the explanatory note cannot expand the

heading beyond its own terms, which require "hygiene." The government's argument, however, is belied by the remainder of the heading, which expressly provides that the phrase "preparations for oral or dental hygiene" includes "denture fixative pastes and powders." In other words, the express inclusion of "denture fixative pastes and powders," which presumably do not cleanse the oral cavity in any significant manner, demonstrates that heading 3306 is not limited by its own terms to products that cleanse.

We further conclude that the term "oral perfume" carries its ordinary meaning as a substance that is intended to "perfume" the oral cavity—i.e., impart a pleasant smell to the mouth. See The American Heritage Dictionary of the English Language 1306 (4th ed. 2000) (defining perfume as "[a] substance that emits and diffuses a fragrant odor"); The New Oxford American Dictionary 1271 (2001) (defining perfume as "a fragrant liquid . . . used to impart a pleasant smell to one's body or clothes"). That definition includes products that merely mask oral malodors and does not require the additional cleansing effects urged by the government. Indeed, the HTSUS and explanatory notes use the term "perfume" in its ordinary sense. Heading 3307 of the HTSUS—a heading that immediately follows the heading in dispute here—specifies "preparations for perfuming or deodorizing rooms." The explanatory notes state that preparations for perfuming rooms "may be used for masking an odour." World Customs Organization, Harmonized Commodity Description and Coding System: Explanatory Notes VI-3307-1 (4th ed. 2007). In contrast, the notes state that prepared room deodorizers "act chemically on the odours to be overcome or . . . physically absorb odours." Id. at VI-3307-2. The HTSUS thus recognizes that malodors may be controlled in two distinct

ways: (1) they may be "deodorized"—i.e., chemically neutralized—or (2) they may be "perfumed"—i.e., masked with a pleasant odor.

Here, the term "oral perfume" requires no more than the masking of oral malodors.[1]  The government does not challenge the status of the MagikStrips as an "oral perfume" under that interpretation.[2]  See Oral Arg. at 12:20–12:30, 13:34–14:00, 22:10–24:32, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1101.mp3. The government's only argument is that products that mask oral malodors are not "oral perfumes" classifiable within heading 3306 unless they exhibit the cleansing effects noted in Warner-Lambert.  We conclude that the government's interpretation of heading 3306 is legally erroneous; no such cleansing effects are required.

---

[1]  At oral argument, the government expressed a concern that this interpretation of heading 3306 could lead to the classification of numerous other items as "preparations for oral or dental hygiene," including products that the government contends negatively impact hygiene, such as candies and flavored cigarettes.  Although we need not speculate at length about future cases, we note that heading 3306 is ostensibly a "use" provision governed by Additional U.S. Rule of Interpretation 1(a). See Note 3 to Chapter 33 (stating that heading 3306 applies to products "suitable for use as goods" that are described by heading 3306).  Thus, prima facie classification within heading 3306 is only appropriate if "goods of that class or kind to which the imported goods belong" are principally used as "oral perfumes."  Additional U.S. Rule of Interpretation 1(a); see Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006) (concluding that certain imported children's backpacks were not prima facie classifiable under use heading specifying "toys" because they were not principally used as toys); Warner-Lambert Co. v. United States, 425 F.3d 1381, 1385 (Fed. Cir. 2005) (concluding that the principal use of imported vitamin C drops was not "therapeutic or prophylactic" despite the fact that the drops could be used to prevent scurvy).  In addition, the government is free to argue in other cases that candies and flavored cigarettes are more specifically provided for in the headings of chapters 17 and 24, respectively.

[2]  In fact, a printout from Drygel's website—characterized in the government's brief as "undisputed evidence"—reveals that the MagikStrips are marketed and sold as a breath freshening product, much like the Certs Powerful Mints in Warner-Lambert.

The government has not argued that the MagikStrips would be more specifically described by subheading 2106.90.99—or any other HTSUS subheading—in the event that they are prima facie classifiable within subheading 3306.90.00. Thus, our conclusion that the MagikStrips are prima facie classifiable within subheading 3306.90.00 ends the analysis.

## CONCLUSION

Because there are no genuine issues of material fact with respect to whether the MagikStrips are an "oral perfume" within subheading 3306.90.00, we reverse the Court of International Trade's denial of Drygel's motion for summary judgment. Accordingly, we need not address the parties' arguments with respect to the government's motion for summary judgment.

## COSTS

Each party shall bear its own costs.

## REVERSED