# United States Court of Appeals
# for the Federal Circuit

———————————

**STOREWALL, LLC,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

———————————

2010-1193

———————————

Appeal from the United States Court of International Trade in case No. 05-CV-0462, Judge Leo M. Gordon.

———————————

Decided: March 31, 2011

———————————

JESSICA R. RIFKIN, Rodriguez, O'Donnell, Gonzalez & Williams, P.C., of Chicago, Illinois, argued for plaintiff-appellant. With her on the brief were R. KEVIN WILLIAMS, and THOMAS J. O'DONNELL.

EDWARD F. KENNY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, of Washington, DC; and BARBARA S. WILLIAMS, Attorney in Charge, of New York, New York. Of counsel on the brief

was PAULA S. SMITH, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

---

Before DYK, PROST, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE. *Circuit Judge* DYK concurs in the result.

MOORE, *Circuit Judge*.

StoreWALL, LLC (storeWALL) appeals the United States Court of International Trade's decision upholding the U.S. Customs and Border Protection's (Customs) classification of storeWALL's wall panels and HangUp locator tabs under Subheading 3926.90.98 of the Harmonized Tariff Schedule of the United States (HTSUS). *storeWALL, LLC v. United States*, 675 F. Supp. 2d 1200, 1201-02 (Ct. Int'l Trade 2000). Because the wall panels and HangUp locator tabs are parts of furniture under Subheading 9403.90.50, HTSUS, we *reverse* and *remand*.

## BACKGROUND

StoreWALL imports wall panels and locator tabs manufactured in Taiwan that are used in conjunction with home organization and storage systems. The HangUp locator tabs, which are made of acrylonitrile butadiene styrene (ABS) plastic, are specially designed mounting hooks for the wall panels – the end user attaches the locator tabs to the wall and the wall panels rest upon the locator tabs. StoreWALL constructs the wall panels from rigid extruded polyvinyl chloride (PVC) plastic. The panels contain "L" shaped grooves in which the end user may place shelves, cupboards, baskets, hooks and other attachments to create a customized storage or

display unit. StoreWALL imports both the wall panels and the locator tabs separately from other components.

Between April and September 2004, Customs liquidated the wall panels under Subheading 3916.20.00, HTSUS, a provision covering "Monofilament of which any cross-sectional dimension exceeds 1 mm, rods, sticks and profile shapes, whether or not surfaced-worked but not otherwise worked, of plastics: Of polymers of vinyl chloride." During the same time period, Customs liquidated the HangUp locator tabs under Subheading 3926.90.98, HTSUS, a provision for "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other."

After liquidation, storeWALL filed three protests with the ports of Los Angeles and Chicago requesting that Customs reclassify both the wall panels and the HangUp locator tabs under duty free provisions. StoreWALL requested that Customs reclassify the wall panels under Subheading 9403.70.80, a provision for "Other furniture and parts thereof: Furniture of plastics: Other," and the locator tabs under Subheading 9403.90.50, a provision for "Other furniture and parts thereof: Parts: Others: Of rubber or plastics: Other." Customs denied all three of storeWALL's protests.

StoreWALL commenced this action in 2005. During the course of the proceedings, Customs discovered that the wall panels were in fact "otherwise worked" within the meaning of Subheading 3916.20.00, HTSUS, and reclassified the wall panels (like the locator tabs) under Subheading 3926.90.98. After the completion of discovery, the parties filed cross-motions for summary judgment.

In its motion for summary judgment, storeWALL argued to the Court of International Trade that its wall

panels and locator tabs are either "unit furniture" or "parts" of "unit furniture" covered under Heading 9403. *storeWALL*, 675 F. Supp. 2d at 1204. The Court of International Trade denied storeWALL's motion for summary judgment and granted the government's cross-motion. *Id.* at 1201-02. The Court of International Trade began by analyzing whether the wall panels and locator tabs are properly classifiable as "other furniture and parts thereof" under Heading 9403. *Id.* at 1203. The Court of International Trade noted that although the HTSUS does not explicitly define the term "furniture," the Chapter Notes clarify that items which are designed "to be hung, to be fixed to the wall or to stand one on the other" such as "cupboards, bookcases, other shelved furniture, and unit furniture" are classifiable under Heading 9403. *Id.* at 1203-04 (citing Chapter 94 Notes, Note 2, HTSUS).

The Court of International Trade noted that the Explanatory Notes attempt to clarify what is included within the scope of unit furniture:

> The Explanatory Notes do not define "unit furniture" either, but add a caveat that "unit furniture" must be "designed to be hung, to be fixed to the wall or to stand one on the other or side by side, for holding various objects or articles (books, crockery, kitchen utensils, glassware, linen, medicaments, toilet articles, radio or television receivers, ornaments, etc.)." The Explanatory Notes also include within the definition of furniture "separately presented elements of unit furniture," but expressly exclude from coverage under Heading 9403 "other wall fixtures such as coat, hat and similar racks, key racks, clothes brush hangers and newspaper racks. . . ."

*Id.* (internal citations omitted). The Court of International Trade also reviewed the 1971 Brussels Nomenclature Committee Report, which emphasizes that "unit furniture" is "arranged to suit the tastes and needs of their users and the shape and size of the rooms to be furnished." *Id.* The Court of International Trade reviewed dictionary definitions of the term "unit" and ultimately defined "unit furniture" as:

[A]n item

(a) fitted with other pieces to form a larger system or which is itself composed of smaller complementary items,

(b) designed to be hung, to be fixed to the wall, or to stand one on the other or side by side, and

(c) assembled together in various ways to suit the consumer's individual needs to hold various objects or articles, but

(d) excludes other wall fixtures such as coat, hat and similar racks, key racks, clothes brush hangers, and newspaper racks.

*Id.*

The Court of International Trade determined that under this definition of "unit furniture," a completed storeWALL system may be classifiable as unit furniture. *Id.* at 1204-05. However, if an end user decided to accessorize the wall panels "only with hooks, as opposed to shelves or baskets," then the completed storeWALL system is "merely a rack, which is expressly excluded from coverage . . . ." *Id.* at 1205. The Court of International Trade concluded that because a completed storeWALL system is not always "unit furniture," the wall panels and locator tabs are not *prima facie* classifiable under Heading 9403 because imported parts must be

dedicated solely or principally for use with the classified item. *Id.*

Having concluded that the wall panels and locator tabs are not classifiable under Heading 9403, the Court of International Trade determined that Customs properly classified both articles under Subheading 3926.90.98, HTSUS as "Other articles of plastics . . .: Other: Other." *Id.* at 1206. StoreWALL appeals and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the Court of International Trade's ruling on summary judgment *de novo. See, e.g., Drygel, Inc. v. United States*, 541 F.3d 1129, 1133 (Fed. Cir. 2008). Proper classification of goods under the HTSUS entails a two step process: First, ascertaining the meaning of specific terms in the tariff provision; and second, determining whether the goods come within the description of those terms. *See, e.g., Millenium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). "The interpretation of the headings and subheadings of the HTSUS is a question of law reviewed without deference." *Drygel*, 541 F.3d at 1133. Whether the goods fall within the scope of the headings and subheadings is a question of fact and storeWALL bears the burden of proving the classification is erroneous because Customs' classification decisions are presumed correct. *Millenium Lumber*, 55 F.3d at 1328. We review the factual findings of the Court of International Trade for clear error. *Deckers Corp. v. United States*, 532 F.3d 1312, 1315 (Fed. Cir. 2008).

The General Rules of Interpretation (GRI) govern classifications under HTSUS. *Millenium Lumber*, 55 F.3d at 1328. "Under GRI 1, the court must determine the appropriate classification 'according to the terms of the headings and any relative section or chapter notes' with

all terms construed to their common commercial meaning." *Id.* at 1328-29. Unlike Chapter Notes, Explanatory Notes are not legally binding. *Id.* at 1329. However, the Explanatory Notes "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Id.* (quoting *N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001)).

### A. The Court of International Trade's Definition of "Unit Furniture"

StoreWALL argues that the Court of International Trade erred by defining "unit furniture" to exclude "other wall fixtures such as coat, hat and similar racks, key racks, clothes brush hangers, and newspaper racks." For ease of reference, we will refer to this express language in part (d) of the Court of International Trade's definition of "unit furniture" as "the rack exclusion." StoreWALL proposes the following definition of "unit furniture":

> [A]n article or articles of convenience or decoration, used to furnish living quarters or other spaces, composed of more or less repetitive sections which are combined to form either a single article or a larger system of articles (Chapter 94 Note 2 makes clear that such "unit furniture" includes articles designed for placing on the floor or ground, to be hung, to be fixed to the wall, or to stand one on the other).

Appellant's Br. 16. Although storeWALL admits that it "generally agrees" with the Court of International Trade's definition of "unit furniture," it argues that the addition of the "rack exclusion" based solely on the Explanatory Notes is improper because it is "inconsistent with the broad common and commercial meaning of the term 'unit

furniture.'" *Id.* at 16-17. StoreWALL argues that under our precedent, the Explanatory Notes "cannot be used to contradict or artificially limit the broad common and commercial meaning of ['unit furniture.']" *Id.* at 22-23 (citing *Archer Daniels Midland Co. v. United States*, 561 F.3d 1308 (Fed. Cir. 2009); *Airflow Tech., Inc. v. United States*, 524 F.3d 1287 (Fed. Cir. 2008)).

The government argues that the Court of International Trade properly relied on the Explanatory Notes to define "unit furniture." The government contends that Chapter 94, Note 2 creates exceptions to the general rule that furniture must be designed to be placed on the floor or the ground, including "unit furniture" that is designed to be hung, to be fixed to the wall or to stand one on the other. Appellee's Br. 22. The government argues that although the Explanatory Notes are not binding, the Court of International Trade appropriately consulted the Explanatory Notes for further detail regarding the scope of "unit furniture." *Id.* at 23-24.

Note 2 to Chapter 94 makes clear that articles are classifiable as furniture under Heading 9403, HTSUS, only if the article is designed to be placed on the floor or the ground, or it falls under specified exceptions. Chapter 94 Notes, Note 2, HTSUS. Note 2 explicitly identifies "cupboards, bookcases, other shelved furniture, and unit furniture that are designed to be hung, to be fixed to the wall or to stand one on the other" as such excepted articles. *Id.* The HTSUS does not define the term "unit furniture" or provide any clarification regarding the scope of the term. Where the HTSUS does not define a tariff term, the correct meaning of the term is its common commercial meaning absent contrary evidence. *Airflow Tech.*, 524 F.3d at 1291. In order to determine the common commercial meaning of a tariff term, courts may consult dictionaries, encyclopedias, scientific authorities,

and other reliable information sources. *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).

This is precisely what the Court of International Trade did here. The Court of International Trade first reviewed the Headings and Subheadings at issue and the corresponding Chapter Notes to clarify what fell under the definition of "furniture." *storeWALL*, 675 F. Supp. 2d at 1203-04. The Court of International Trade then consulted both the 1971 Brussels Nomenclature Committee Report and dictionaries to properly define "unit furniture" in light of the Chapter Notes. *Id.* at 1204.

Furthermore, the Court of International Trade did not err in consulting the Explanatory Notes. Although not binding, where a tariff term is ambiguous the Explanatory Notes may provide persuasive and "clearly relevant guidance" to the meaning of the term. *Agfa Corp. v. United States*, 520 F.3d 1326, 1330 (Fed. Cir. 2008). In making this determination, we recognize that in *Airflow Technology*, we cautioned against the use of Explanatory Notes that contradict the plain language of an unambiguous heading. *Airflow Tech.*, 524 F.3d at 1293 ("[W]hen the language of the tariff provision is unambiguous and the Explanatory Notes contradictory, 'we do not afford [the Explanatory Notes] any weight.'"). We later reaffirmed this holding in reaching our decision in *Archer Daniels*. 561 F.3d at 1315. Here, however, the Court of International Trade's importation of the "rack exclusion" from the Explanatory Notes into its definition of "unit furniture" does not contradict the common commercial meaning of "unit furniture," but instead clarifies the scope of the term. Therefore, the Court of International Trade appropriately looked to the Explanatory Notes for clarification and in doing so properly defined "unit furniture."

### B. The Classification of storeWALL's Wall Panels and Locator Tabs

StoreWALL contends that, although the Court of International Trade correctly determined that a completed storeWALL system with shelves could satisfy the definition of "unit furniture," it clearly erred in its determination that a completed system accessorized only with hooks is "merely a rack, which is expressly excluded from coverage under Heading 9403 by the Explanatory Notes." The government disagrees and argues that the Court of International Trade correctly determined that a storeWALL system using only hooks is a rack. The government contends that neither the wall panels nor the HangUp locator tabs are classifiable as "parts" of "unit furniture" because they are not designed solely or principally for use with "unit furniture" (i.e. a storeWALL system with shelves, baskets, cupboards, etc.), but may also be used with racks (i.e. a storeWALL system accessorized with hooks).

We agree with storeWALL that the Court of International Trade clearly erred in its determination that a completed storeWALL system utilizing only hooks is "merely a rack," and therefore, excluded from the Court of International Trade's definition of "unit furniture." The Court of International Trade determined that the wall panels and locator tabs were not parts of "unit furniture" because "a completed storeWALL system is too fungible at the time of importation to possess one fixed and certain application as unit furniture." *storeWALL*, 675 F. Supp. 2d at 1205. However, the fact that a storeWALL system is "fungible" is due entirely to the system's versatility and adaptability, characteristics that are the hallmark of unit furniture. As the Court of International Trade's definition notes, unit furniture may be "assembled together in

various ways to suit the consumer's individual needs to hold various objects or articles." The 1971 Brussels Nomenclature Committee Report confirms this definition by stating that unit furniture is "arranged to suit the tastes and needs of [its] users and the shape and size of the rooms to be furnished." Nomenclature Committee, 26th Session, Report (Apr. 14, 1971); (J.A. 279).

The versatility and adaptability of a completed storeWALL system is the reason that such a system, equipped only with hooks, is dissimilar to wall fixtures such as coat, hat and similar racks. An end user may add shelving, cupboards, baskets, etc. to a storeWALL system initially equipped only with just hooks. Indeed, the end user could remove all of the hooks and replace them with other accessories. However, a coat rack, a hat rack, or any conceivable "similar rack" does not possess that same flexibility. One day a storeWALL system could only have hooks, the next it could only contain shelving – but a coat rack will always be just a coat rack.

The fact that the end user has the option with the storeWALL system to add or subtract accessories is the very reason any such system is unit furniture under the Court of International Trade's definition. Even if equipped only with hooks, the storeWALL system retains the essential versatility and adaptability that is the very essence of unit furniture. Therefore, because both the wall panels and HangUp locator tabs are dedicated solely for use with a completed storeWALL system, and such a system is unit furniture, the Court of International Trade clearly erred by not classifying the products as "parts" of unit furniture under Subheading 9403.90.50, HTSUS.[1]

---

[1]     Because we have determined that the wall panels are properly classifiable as "parts" of unit furniture under Subheading 9403.90.50, HTSUS, we need not address

CONCLUSION

There are no genuine issues of material fact with respect to whether storeWALL's wall panels and HangUp locator tabs are properly classified under Subheading 9403.90.50, HSTUS. Accordingly, we reverse the Court of International Trade's grant of summary judgment and order that on remand summary judgment be granted to storeWALL in accordance with this opinion.

**REVERSED AND REMANDED**

---

storeWALL's alternative argument that the wall panels are properly classifible under Subheading 9403.70.80, HTSUS, as "separately presented elements" of unit furniture.

# United States Court of Appeals
# for the Federal Circuit

---

**STOREWALL, LLC,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

---

2010-1193

---

Appeal from the United States Court of International Trade in case no. 05-CV-0462, Judge Leo M. Gordon.

---

DYK, *Circuit Judge*, concurring.

I join the majority opinion except for Part B, and I also agree that the majority reaches the correct result. However, I respectfully disagree with the reasoning of Part B. In my view, Heading 9403 as applied to "unit furniture" is a use provision, rather than an eo nomine provision as the majority concludes.

### I

To be a use provision, a heading has to "[describe] articles by the manner in which they are used as opposed to by name." *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1308 (Fed. Cir. 2003). In contrast, an eo nomine provision is one "in which an item is identified by name." *Id.*

In many respects, Heading 9403 is unquestionably a use provision because many subheadings in this section depend on use.  *See, e.g.*, Subheading 9403.10.00, HTSUS ("Metal furniture of a kind *used* in offices") (emphasis added); Subheading 9403.40, HTSUS ("Wooden furniture of a kind *used* in the kitchen") (emphasis added); Subheading 9403.90.10, HTSUS ("Parts [o]f furniture of a kind *used* for motor vehicles" (emphasis added)).  Similarly, the chapter notes and explanatory notes for Section 9403 all describe "unit furniture" by "the manner in which [it] is used as opposed to by name." *Len-Ron*, 334 F.3d at 1308.  As we concluded in *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003), "[s]ection and [c]hapter [n]otes are not optional interpretive rules, but are statutory law" with binding legal effect.  *See also* General Rule of Interpretation 1, HTSUS (stating that classification "shall be determined according to the terms of the headings and any relative section or chapter notes").  Chapter Note 2 to Chapter 94, which controls this case, provides:

> The articles (other than parts) referred to in headings 9401 to 9403 are to be classified in those headings only if they are *designed for placing* on the floor or ground.  The following are, however, to be classified in the above-mentioned headings even if they are *designed to be hung*, to be fixed to the wall or to stand one on the other: (a) Cupboards, bookcases, other shelved furniture and unit furniture . . . .

Chapter 94 Notes, Note 2, HTSUS (emphases added). The Explanatory Notes similarly state that "unit furniture" must be "*designed to be hung*, to be *fixed* to the wall or to *stand* one on the other or side by side, *for holding*

various objects or articles . . . ."[1] Explanatory Notes to Chapter 94 (2002) (emphases added).

Although the Chapter Notes do not contain the words "used for," our court has held that a provision may be a use provision even without such language. In *Processed Plastic Co. v. United States*, 473 F.3d 1164, 1169–70 (Fed. Cir. 2006), we defined a HTSUS subheading as a use provision even though the phrase "used for" was absent from Subheading 9503.70.00, HTSUS. That provision covered, "Other toys; reduced-size ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof: Other toys, put up in sets or outfits, and parts and accessories thereof." *Id.* at 1168. *Processed Plastic* upheld the standard adopted in *Minnetonka Brands, Inc. v. United States*, 110 F. Supp. 2d 1020, 1026 (Ct. Int'l Trade 2000), which stated that

> [a]lthough nothing in heading 9503 . . . explicitly states that an item's classification as a 'toy' is dependent upon its use, the court finds inherent in the above definitions the notion that an object is a toy only if it is designed and used for amusement, diversion or play, rather than practicality.

*See also Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed. Cir. 1998) (finding "[i]nherent in the term 'preparation' . . . the notion that the object involved is destined for a specific use"). Thus, we construed head-

---

[1] The Explanatory Notes to Chapter 94, though not legally binding, define the following as "furniture": "Cupboards, bookcases, other shelved furniture and unit furniture, designed to be hung, to be fixed to the wall or to stand one on the other or side by side, for holding various objects or articles . . . and separately presented elements of unit furniture." Explanatory Notes to Chapter 94 (2002).

ing 9503 as a "principal use" provision, insofar as it pertained to "toys."

Similarly, Subheading 9403.90.50, HTSUS, is a use provision because the classification of the storeWALL panels turns on the manner of use—whether the items are primarily used with shelves or with hooks. Just as the toys in *Processed Plastic* were "designed and used for amusement, diversion or play," the unit furniture here—as the majority describes—is inherently designed to be "assembled together in various ways to suit the consumer's individual needs to hold various objects or articles." Maj. Op. at 10–11.

Indeed, the majority touts the "versatility and adaptability" of unit furniture, and then cites the Brussels Nomenclature Committee Report, which defines unit furniture as furniture "arranged to suit the tastes and needs of [its] users and the shape and size of the rooms to be furnished." Maj. Op. at 11 (quoting Nomenclature Committee, 26th Session, Report (Apr. 14, 1971)); (J.A. 279). As the majority states, "[t]he fact the end user has the option with the storeWALL system to add or subtract accessories is the very reason any such system is unit furniture under the Court of International Trade's definition." Maj. Op at 11. Thus, the majority itself describes "articles by the manner in which they are used as opposed to by name." *Len-Ron Mfg. Co.*, 334 F.3d at 1308. This is the very definition of a use provision.

## II

Under a use analysis, Subheading 9403.90.50 is governed by Additional U.S. Rule of Interpretation 1(a), which states that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation of goods of that class or kind to

which the imported goods belong, and the controlling use is the principal use." Here, the evidence shows that the principal use of the storeWALL system was not as a rack. In 2008, a survey of ten independent dealers selling storeWALL panels, accounting for over 50% of store-WALL's wall panel sales, showed that over 95% of the accessory sales by these dealers were for cabinets and shelves, and only 4.8% of sales were for hooks. J.A. 315.

Nonetheless, the government relies on *Millennium Lumber Distribution Ltd. v. United States*, 558 F.3d 1326, 1329–31 (Fed. Cir. 2009), to contend that we cannot look to principal use because the storeWALL system was "not dedicated solely or principally to unit furniture as [it could] be configured, finished, and completed to form articles which are not classifiable under Heading 9403." Appellee's Br. 21. Under *Millennium Lumber*, "if the item as imported can be made into *multiple* parts of articles, the item must identify and fix with certainty the individual parts that are to be made from it." *Id.* at 1329 (internal quotation omitted). The cut lumber at issue in *Millennium Lumber* was unfinished, raw material that could be used for trusses and other general purposes, rather than "identifiable parts" of a specific finished truss. *Id.* at 1329–30. In contrast, the storeWALL panels are finished items that are consistent with the Court of International Trade's definition of unit furniture—items that may be "assembled together in various ways to suit the consumer's individual needs to hold various objects or articles." *storeWALL, LLC v. United States*, No. 05-00462, slip. op. at 7 (Ct. Int'l Trade Dec. 18, 2009). The principal use provision thus governs, and the wall panels are properly classifiable as "parts" of unit furniture under Subheading 9403.90.50.