# United States Court of Appeals for the Federal Circuit

---

**ALCAN FOOD PACKAGING (Shelbyville),**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2014-1003

---

Appeal from the United States Court of International Trade in No. 09-CV-0095, Senior Judge Judith M. Barzilay.

---

Decided: November 18, 2014

---

WILLIAM RANDOLPH RUCKER, Drinker Biddle & Reath LLP, of Chicago, Illinois, argued for plaintiff-appellant.

AIMEE LEE, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and AMY M. RUBIN, Acting Assistant Director, International Trade Field Office. Of counsel on the brief was PAULA SMITH, Office of Assistant

Chief Counsel, United States Customs and Border Protection, of New York, New York.

———————————

Before PROST, *Chief Judge,* DYK and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This case involves a dispute over whether a flexible multilayer sheet, composed of several plastic layers encasing a single aluminum layer, should be classified under (a) a plastics heading or (b) an aluminum-foil heading of the Harmonized Tariff Schedule of the United States (HTSUS). The Court of International Trade classified the product, called Flexalcon, under HTSUS subheading 3921.90.40—"Other plates, sheets, film, foil and strip, of plastics: Other: flexible." *Alcan Food Packaging (Shelbyville) v. United States*, 929 F. Supp. 2d 1338, 1351 (Ct. Int'l Trade 2013). We affirm, concluding that Flexalcon comes within that heading and that the competing aluminum-foil heading defers to the applicable plastics heading.

## BACKGROUND

In 2005 and 2006, Alcan Food Packaging (Shelbyville) imported Flexalcon, an aluminum-plastic laminate foil made to be used for food packaging with stringent shelf-life requirements, such as packaging for the United States military's Meals Ready to Eat (MREs). The Flexalcon at issue is a flat, multi-layer material that comes in two configurations: a four-layer material for the base of a package and a three-layer material for the lid. Each configuration has a thin layer of aluminum foil sandwiched between layers of plastic.

The aluminum layer serves an important barrier function. It substantially prevents the penetration of light, water vapor, oxygen, and other harmful contaminants that would degrade the packaging's food contents.

J.A. 750, 757.  The plastic too serves important functions. It gives the packaging tensile strength during production, processing, and in the final product.  *See* J.A. 591–92.  It increases heat resistance so that the packaging can withstand the sterilization and sealing processes.  *Id.*  It allows the package to be hermetically sealed to protect the food within.  *Id.*  And it substantially prevents cracking, piercing, and pinhole formation in expected use—all common problems with thin aluminum foils like the foil used in Flexalcon.  J.A. 318–19, 618.  All of these properties, both those imparted by aluminum and those due to plastic, are important for meeting the military's requirements for flexible food packaging.  J.A. 759–79.

When Alcan imported the Flexalcon at issue, it listed the material as classifiable under HTSUS subheading 7607.20.50.  That heading carries no duty rate and covers "[a]luminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm: Backed: Other."  The Bureau of Customs and Border Protection subsequently notified Alcan that it had reclassified the imports of Flexalcon under HTSUS subheading 3921.90.40.  That heading has a 4.2% duty rate and covers "[o]ther plates, sheets, film, foil and strip, of plastics: Other: Flexible."  Alcan protested under 19 U.S.C. §§ 1514–1515.  After the protests were denied, Alcan filed suit in the Court of International Trade under 28 U.S.C. § 1581(a), arguing for classification under subheading 7607.20.50.

On July 25, 2013, the Court of International Trade upheld the classification on cross-motions for summary judgment.  The dispute was and is entirely over HTSUS headings 3921 and 7607, not over subheadings within those headings.  The court held that heading 3921 supplies the proper classification.

The court concluded that both headings cover some composites of plastic and aluminum. *Alcan*, 929 F. Supp. 2d at 1346–48. Drawing from the accompanying chapter and explanatory notes, the court held that such composites could be classified under heading 3921 "provided they retain their essential character as articles of plastics," *id.* at 1346, and under 7607 "provided that they do not . . . assume the character of articles or products of other headings," *id.* at 1347. The court therefore analyzed Flexalcon to determine its "essential character," examining "'the nature of the material or component, its bulk, quantity, weight [and] value, [and] the role of a constituent material in relation to the use of the goods.'" *Id.* at 1348 (quoting Explanatory Note to General Rule of Interpretation 3(b)). It found that "the plastic layers predominate in terms of 'bulk, quantity, weight [and] value.'" *Id.* at 1349. And with respect to the relationship between constituent materials and Flexalcon's intended use, the court ruled that "both materials (plastic film and aluminum foil) are indispensable to the functioning of Flexalcon." *Id.* Based on that analysis, the court ultimately concluded that "Flexalcon does retain the character of plastic and does not assume the character of aluminum foil." *Id.* at 1350 ("[T]he plastic layers provide the constituent materials that permit military field rations to be distributed in the form of soft, lightweight packages.") Accordingly, the court held that Flexalcon was properly classified under heading 3921 (specifically, under HTSUS subheading 3921.90.40). *Id.* at 1352.

Alcan timely appealed, arguing that Flexalcon is backed aluminum foil as described in heading 7607, that aluminum gives Flexalcon its essential character, and that heading 7607 therefore is the proper classification. This court has jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review de novo the Court of International Trade's decision to grant summary judgment. *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1361 (Fed. Cir. 2011). Classifying goods under the HTSUS is a two-step process: ascertaining the meaning of heading terms; determining whether the imported merchandise comes within those terms. *Id.* at 1361–62. The first step presents an issue of law we decide de novo, the second an issue of fact subject to review for clear error. *Id.* at 1362. The "essential character" of merchandise is a fact-intensive issue. *See Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1337 (Fed. Cir. 2007); *Better Home Plastics Corp. v. United States*, 119 F.3d 969, 971–72 (Fed. Cir. 1997).

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). "The classification of merchandise under the HTSUS is governed by the principles set forth in the GRIs [(General Rules of Interpretation)] and the Additional U.S. Rules of Interpretation." *Id.* We apply the GRIs in numerical order; if a particular rule resolves the classification issue, we do not look to subsequent rules. *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011).

GRI 1 says, in relevant part, that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." When GRI 1 does not resolve the issue of "classification of goods consisting of more than one material or substance," GRI 2(b) requires application of "the principles of rule 3." Rule 3 states three rules for composite goods that *prima facie* fit within multiple headings: first, the heading that more specifically describes the goods applies, GRI 3(a); second,

if no heading is more specific, then the goods are "classified as if they consisted of the material or component which gives them their essential character," GRI 3(b); third, if the first two options fail to decide the issue, the goods are classified under the applicable heading that occurs last in numerical order, GRI 3(c).

This case involves the composite material Flexalcon, which is made of laminated layers of aluminum and plastic. The initial question, following GRI 1, is whether Flexalcon is classifiable according to the headings and notes under either heading 3921 or 7607. Concluding that this heading analysis resolves the issue, we do not go on to the GRI 3 analysis.

Heading 3921 covers "[o]ther plates, sheets, film, foil and strip, of plastics." This use of "other" refers to, and thus gathers meaning from, what comes before. Heading 3920 reaches "[o]ther plates, sheets, film, foil and strip, of plastics, noncellular and not reinforced, laminated, supported or similarly combined with other materials." The implication is that heading 3921 covers relevant "other" plastic goods excluded from 3920 by the phrase after "plastics"—that is, it covers plastic goods that either are cellular or are "reinforced, laminated, supported or similarly combined with other materials."

Note 10 to Chapter 39, which is part of the statute, *see* 19 U.S.C. § 1202, makes clear that such multi-material goods may not be "further worked": it says that 3920 and 3921 cover the specified plastic goods "whether or not printed or otherwise surface-worked, uncut or cut into rectangles (including squares) but not further worked." But given that the combined heading language of 3920 and 3921 itself makes clear that 3921 includes plastics laminated with other materials, lamination cannot constitute further working. *See Alcan*, 929 F. Supp. 2d at 1350–51. And Alcan points to nothing but lamination as the

alleged further working.  The "further working" provision is therefore inapplicable here.

The General Explanatory Note to Chapter 39 provides additional confirmation that heading 3921 covers plastics laminated with aluminum foil.  We have said that such explanatory notes, though not enacted by Congress, "are 'generally indicative' of the proper interpretation of a tariff provision," and we have "credited the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it." *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008) (quoting *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007)).  Here, the relevant explanatory note to Chapter 39 states that the chapter includes "[p]lates, sheets, etc., of plastics, *separated by a layer of another material such as metal foil*" as long as such goods "retain the essential character of plastics."  (Emphasis added.)

The Court of International Trade in this case carefully analyzed Flexalcon to determine its "essential character." *Alcan*, 929 F. Supp. 2d at 1348–50.  It found that plastic predominates in Flexalcon according to traditional measures like bulk, quantity, weight, and value.  *Id.* at 1349.  It found that plastic and aluminum are both indispensable to Flexalcon's use in food packaging.  *Id.*  It determined that plastic gives Flexalcon its strength and flexibility, qualities that define Flexalcon as a product. *Id.* at 1350.  On those bases, the court found that "Flexalcon does retain the essential character of plastic." *Id.*; *see id.* at 1348.  We find no error in those determinations, and Alcan has not objected to resolution of the issues on summary judgment, without a trial.

For all of the foregoing reasons, Flexalcon comes within heading 3921 as properly understood.

Our conclusion is not altered by heading 7607, which covers "[a]luminum foil (whether or not printed or backed with paper, paperboard, plastics or similar backing mate-

rials) of a thickness (excluding any backing) not exceeding 0.2 mm." Note 1(d) to Chapter 76, which is part of the statute, provides a two-part clarification, stating that heading 7607 "appl[ies], *inter alia*, to plates, sheets, strip and foil with patterns . . . and [1] to such products which have been perforated, corrugated, polished or coated, [2] provided that they do not thereby assume the character of articles or products of other headings." (Bracketed numbers added.) The first part of that clarification is reinforced by the (nonstatutory) General Explanatory Note to Chapter 76: that note incorporates part of the General Explanatory Note to Chapter 72 (covering iron and steel products), which explains that "finished products may be subjected to further finishing treatments," including "coating with ceramics or plastics" and "[l]amination." But the second part of the clarification, limiting the first, is critical here: it says that heading 7607 covers the specified composite products "provided that they do not thereby assume the character of articles or products of other headings." That is a priority rule, giving priority to another heading that covers the composite product.

That rule decides the dispute here. Alcan affirmatively relies on Chapter Note 1(d) to bolster its argument for heading 7607 coverage of aluminum laminated with plastic, and it therefore acknowledges, as it must, that Chapter Note 1(d) limits coverage of such products under heading 7607 to goods that do not assume the character of products of another heading. Alcan Opening Br. 12.[1]

---

[1] Alcan Opening Br. 12 ("Heading 7607 covers all forms of aluminum foil, even improved forms (*e.g.*, coated, backed, or laminated), so long as the foil does not assume the character of articles or products of other headings. *See* Chapter 76, Note 1(d)."); *id.* at 21–22 ("Here, the applicable section and chapter notes direct classification of the Flexalcon under Heading 7607 pursuant to GRI 1.

Once we have concluded that heading 3921 applies to Flexalcon, we must find heading 7607 inapplicable. Even if heading 7607 otherwise applied, Note 1(d) establishes that the composite product is outside heading 7607 when it assumes the character of an article covered by another heading—in this case, heading 3921.

Alcan argues that Flexalcon comes within heading 7607 because it is aluminum foil "backed" with plastic. But even if "backing" is broad enough to include foils laminated with plastic on both sides, the argument does not help Alcan. It does nothing to avoid Note 1(d)'s priority rule, which applies to products that otherwise come within heading 7607, including those "backed with . . . plastics." As noted, Alcan concedes that Note 1(d) applies to products, like Flexalcon, that are coated, laminated, or backed. Because Flexalcon assumes the character of plastic goods in heading 3921, Note 1(d) requires its classification under that heading. And once heading 3921 applies, Alcan does not dispute the choice of subheadings.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of International Trade.

**AFFIRMED**

---

Specifically, HTSUS Chapter 76 Note 1(d) clarifies that this heading applies to foil products which have been further processed, 'provided that they do not thereby assume the character of articles or products of other headings.'").