Slip. Op. 13-23

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| DEPENDABLE PACKAGING SOLUTIONS, INC., | : | |
| Plaintiff, | : | |
| v. | : | |
| UNITED STATES, | : | Before: Richard K. Eaton, Judge |
| Defendant. | : | Court No. 10-00330 |

## OPINION and ORDER

[Defendant's motion for summary judgment is granted; plaintiff's cross-motion for summary judgment is denied; case dismissed.]

Dated: February 20, 2013

*Peter S. Herrick*, of Miami, FL, for plaintiff.

*Stuart F. Delery*, Acting Assistant Attorney General; *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Karen V. Goff*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Sheryl A. French*), of counsel, for defendant.

Eaton, Judge: At issue is the proper classification of two articles of glass imported by plaintiff Dependable Packaging Solutions, Inc. ("Dependable" or "plaintiff"). Before the court are the cross-motions for summary judgment of plaintiff and of the United States ("defendant" or "the Government") on behalf of U.S. Customs and Border Protection ("Customs"). Def.'s Mot.

for Summ. J. (ECF Dkt. No. 25); Pl.'s Cross Mot. for Summ. J. (ECF Dkt. No. 30) ("Pl's Mot.").

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2006).

For the reasons set forth below, defendant's motion for summary judgment is

GRANTED, plaintiff's cross-motion for summary judgment is DENIED, and the court finds that

plaintiff's merchandise is properly classified under Heading 7013 of the Harmonized Tariff

Schedule of the United States ("HTSUS").

## BACKGROUND

The facts described below have been taken from the parties' 2012 USCIT Rule 56(h)

statements and the record. Where no citation is provided, the statement has been admitted.[1]

Citation to the record is provided where a fact, although not admitted in the parties' papers, is

uncontroverted by record evidence.

On May 29, 2010, Dependable, an importer and distributor of packing, janitorial, floral,

and office supplies, imported the glass items, identifying them on their respective commercial

invoices as "Generic Bud Vases" for the smaller type ("bud vases") and "Generic Trumpet

Vases" ("trumpet vases") for the larger type (collectively, "the vases"). The vases are articles of

---

[1] At the time of filing, Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Dependable's USCIT R. 56(h)(2) statement") failed to comply with the then-applicable requirements of USCIT R. 56(h)(4) (2012). That rule required that "[e]ach statement by the movant or opponent pursuant to Rule 56(h)(1) and (2), including each statement controverting any statement of material fact, will be followed by citation to evidence which would be admissible." Dependable's USCIT R. 56(h)(2) statement, however, summarily denied paragraphs 13, 17–26, 29, and 35–36, without providing any citation to admissible evidence supporting the denials. As a consequence, defendant has asked the court to disregard those denials and deem admitted the facts asserted in the controverted paragraphs. Because this case is one involving customs classification, the court declines to do so. *See Roche Vitamins, Inc. v. United States*, 35 CIT ___, ___, 791 F. Supp. 2d 1315, 1318 (2011) ("[D]eeming [denials without citations] admitted could preclude the 'correct result' that the Federal Circuit requires [the Court of International Trade] to reach in customs classification cases.").

glass imported empty from the People's Republic of China. Both vases have an inexpensive look and visible seams. At the time of importation, the bud vases were valued at no more than $0.30 and the trumpet vases at more than $0.30 but no greater than $3.00. Pictures of the vases, as advertised in Dependable's brochure, are appended to this opinion.

The bud vases are eight inches in height, with a quarter-inch lip that the parties agree is not designed for any sort of closure.[2] The lip surrounds an opening measuring one and one-half inches in diameter. The bud vases have a narrow neck extending downward five inches from the opening. The neck then widens into a bulbous shape, two and three-quarters inches in diameter at its widest point, and ends in a slightly concave bottom two inches in diameter. The bud vases also have deepening striations beginning one inch below the lip that continue to the bottom of the article.

The trumpet vases are nine and three-quarter inches in height with a quarter-inch lip that the parties agree is not designed for any sort of closure. The lip surrounds an opening measuring three and three-quarter inches in diameter. The diameter of the opening gradually narrows (as one moves two-thirds of the way down the vase) to a diameter of three inches, widening again thereafter to end in a bottom measuring four and one-quarter inches in diameter.

After importation, Dependable sells the vases to mass-market flower packing houses that fill them with flowers, water, and sometimes an additional nutrient solution from the grower. The packing houses then ship the flower-packed vases to retailers, typically supermarkets or similar stores, where the flowers and vases are displayed and sold as a unit. Dependable's vases are not sold empty at retail, but vases similar in design are sold empty at retail. Rozanski Decl.

---

[2]     The measurements of the vases were determined by the court's examination of the samples.

¶¶ 14–15 (ECF Dkt. No. 25-9).[3]  The vases can be reused.  Grandio Dep. 41:7–41:10 (ECF Dkt. No. 25-2)[4]; Rozanski Decl. ¶ 14.

At the time of entry, Dependable classified the vases under HTSUS 7018.90.50.[5]  At liquidation, Customs classified the bud vases under HTSUS 7013.99.40[6] and the trumpet vases under HTSUS 7013.99.50.[7]  After its timely filed protest was deemed denied[8] and the assessed duties were paid, Dependable commenced this action, abandoning its entered classification under HTSUS 7018.90.50 by arguing that both vases are properly classified under HTSUS 7010.90.30.[9]  In its motion for summary judgment, the Government maintains that Customs'

---

[3]     Ms. Rozanski is a Senior Import Specialist for glass commodities with Customs. She was responsible for Customs' classification of the goods.  Rozanski Decl. ¶¶ 1–2.

[4]     Mr. Grandio is in charge of Dependable Packaging's floral division.  Grandio Dep. 7:7–7:11.  He is identified in Dependable's interrogatory responses as the only person known to Dependable Packaging "to have personal knowledge of the factual matters" at issue in this litigation.  Pl.'s Resp. to Interrog. & Req. 1(a) (ECF Dkt. No. 25-5, at 4).

[5]     HTSUS 7018.90.50 covers: "Glass beads, imitation pearls, imitation precious or semiprecious stones and similar glass smallwares and articles thereof other than imitation jewelry; glass eyes other than prosthetic articles; statuettes and other ornaments of lamp-worked glass, other than imitation jewelry; glass microspheres not exceeding 1 mm in diameter: Other: Other."

[6]     HTSUS 7013.99.40 covers: "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other: Valued not over $0.30 each."

[7]     HTSUS 7013.99.50 covers: "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): Other: Valued over $0.30 but not over $3 each."

[8]     Where, as here, a party requests accelerated disposition of a protest and Customs does not act within thirty days, the protest is deemed denied.  19 U.S.C. § 1515(b) (2006).

[9]     The parties disagree as to the language of HTSUS 7010.90.30.  Plaintiff reads that subheading to cover: "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stopper lids and other closures of glass: Other: Other."  Pl.'s Compl. ¶ 15 (ECF Dkt. No. 4).  Customs

classifications were correct and Dependable continues to argue for classification under HTSUS 7010.90.30 in its cross-motion.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." USCIT R. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In the context of a classification action, "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc. v. United States,* 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citations omitted).

The court reviews Customs' classification decisions de novo, applying the HTSUS General Rules of Interpretation ("GRIs") and the HTSUS Additional U.S. Rules of Interpretation ("ARIs").[10] *CamelBak Prods., LLC v. United States,* 649 F.3d 1361, 1364 (Fed. Cir. 2011). GRI 1 provides, in relevant part, that "classification shall be determined according to the terms of the

---

has consistently read HTSUS 7010.90.30 as: "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stopper, lids and other closures, of glass: Other: Containers (with or without their closures) of a kind used for the conveyance or packing of perfume or other toilet preparations; other containers if fitted with or designed for use with ground glass stoppers: Other." *See* Customs Ruling Letter NY N016987 (Oct. 4, 2007), *available at* 2007 WL 3124166; Customs Ruling Letter NY L82356 (Feb. 23, 2005), *available at* 2005 WL 713874; Customs Ruling Letter NY J86508 (July 18, 2003), *available at* 2003 WL 21916307. While the court agrees with Customs' reading of the disputed subheading, that disagreement is ultimately irrelevant here because Dependable's vases are not classifiable under Heading 7010 at the heading level, eliminating any need for the court to reach the proper reading of HTSUS 7010.90.30.

[10]     Although referred to separately here, the GRIs and ARIs are part of the HTSUS statute which "consists of '(A) the General Notes; (B) the General Rules of Interpretation; the Additional U.S. Rules of Interpretation; (D) sections I to XXII, inclusive (encompassing chapters 1 to 99, and including all section and chapter notes, article provisions, and tariff and other treatment accorded thereto); and (E) the Chemical Appendix." *Baxter Healthcare Corp. of Puerto Rico v. United States,* 182 F.3d 1333, 1337 (Fed. Cir. 1999) (citing 19 U.S.C. § 3004(a) (1994)).

[HTSUS] headings and any relative section or chapter notes." GRI 1 (2009–2010). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Simod Am. Corp. v. United States,* 872 F.2d 1572, 1576 (Fed. Cir. 1989)). The court "is required to decide the correctness not only of the importer's proposed classification but of the Government's classification as well." *See Jarvis Clark Co. v. United States,* 733 F.2d 873, 874 (Fed. Cir. 1984).

Here, there is no genuine dispute as to "exactly what the merchandise is" or as to its actual use. *Bausch & Lomb,* 148 F.3d at 1365. The only factual disagreement between the parties is to the "principal use" of the vases, and, as discussed below, this quarrel is not a material dispute precluding summary judgment. *See Aromont USA, Inc. v. United States,* 671 F.3d 1310 (Fed. Cir. 2012) (making a principal use determination at summary judgment); *ENI Tech. Inc. v. United States,* 33 CIT __, 641 F. Supp. 2d 1337 (2009) (granting summary judgment on the issue of principal use); *Essex Mfg., Inc. v. United States,* 30 CIT 1 (2006) (resolving a principal use issue on the record facts and the court's examination of the article at summary judgment).

## DISCUSSION

### I.      Legal Framework

Classification determinations are a two-step process by which "the court first ascertains the correct meaning of the relevant tariff provisions and then determines the proper classification for the merchandise at issue." *Pomeroy Collection, Ltd. v. United States,* 35 CIT __, __, 783 F.

Supp. 2d. 1257, 1259 (2011) (citation omitted). The first step is a question of law; the second is a question of fact. *Id.* (citations omitted).

GRI 1 mandates that tariff classification initially "be determined according to the terms of the headings and any relative section or chapter notes." "[A] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading. Only after determining that a product is classifiable under the heading should the court look to the subheadings." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). In other words, tariff headings are construed without reference to their subheadings. *See id.* Accordingly, a court should not look to subheadings to either limit or broaden the scope of a heading.

## II. The Construction of Headings 7010 and 7013

The court finds, and the parties agree, that the vases should be classified under HTSUS chapter 70 ("Glass and glassware"). The parties disagree, however, as to the appropriate heading. The parties agree—correctly—that the competing headings, 7010 and 7013, are principal use provisions. *See Automatic Plastic Molding, Inc. v. United States*, 26 CIT 1201, 1205 n.4 (2002) (noting that the applicable regulation from Customs "concluded headings 7010 and 7013 are 'principal use' tariff provisions") (citation omitted); *Len-Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1313 n.7 (Fed. Cir. 2003) (observing that principal use provisions "employ[] the language 'of a kind'") (citation omitted).

Principal use provisions, such as those at issue here, are governed by ARI 1(a), which the Federal Circuit has stated "calls for a determination as to the group of goods that are commercially fungible with the imported goods" so as to identify the "use which exceeds any

other *single* use." *Aromont*, 671 F.3d at 1312 (quoting *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1365 (Fed. Cir. 1999); *Lenox Collections v. United States*, 20 CIT 194, 196 (1996)). This Court customarily uses several factors, commonly referred to as the "*Carborundum* Factors*", to inform its determination as to which goods are "commercially fungible with the imported goods." *Id.* (quoting *Primal Lite*, 182 F.3d at 1365) (internal quotation marks omitted). Those

> factors include: use in the same manner as merchandise which defines the class; the general physical characteristics of the merchandise; the economic practicality of so using the import; the expectation of the ultimate purchasers; the channels of trade in which the merchandise moves; the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and the recognition in the trade of this use.

*Id.* (citing *United States v. Carborundum Co.,* 536 F.2d 373, 377 (Fed. Cir. 1976)). It is worth mentioning that the actual use of the goods is "evidence of the principal use" but is still only "one of a number of factors." *Id.*

## A. Heading 7010

HTSUS Heading 7010 covers "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stoppers, lids and other closures, of glass." Glass articles that are not capable of closure, while not expressly excluded by the language of the heading, are atypical of the type of article covered by HTSUS 7010. The Explanatory Notes to the Harmonized Commodity Description and Coding System, 4th ed., 70.10 (2007) ("Explanatory Notes") observe that containers classified under HTSUS 7010 "are generally designed for some type of closure." The Explanatory Notes, "while not legally binding, are 'persuasive' and are 'generally indicative' of the proper interpretation of [a] tariff provision." *See Lemans Corp. v. United States*, 660 F.3d

1311, 1316 (Fed. Cir. 2011) (quoting *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008)). Indeed, in *Automatic Plastic Molding*, this court considered the ability of an article to accept a secure, sanitary closure to be an important factor in determining whether an article of glass was properly classified in chapter 7010. *Automatic Plastic Molding*, 26 CIT at 1207 (citing *Kraft, Inc. v. United States*, 16 CIT 483, 487 (1992)). There, even though the article was not shipped with a closure that could form a sanitary seal, the fact that it was designed with a finish capable of closure was "probative as to its principal use as a container for the conveyance or packing of goods." *Id.* at 1204 n.3.

Although the vases are not designed to accept any kind of closure, plaintiff argues that they are properly categorized as "containers, of glass, of a kind used for the conveyance or packing of goods." HTSUS 7010. In making its claim, plaintiff notes that the articles are made of glass and insists that their principal use is as a packing container for the wet transportation of flowers.[11] In other words, according to plaintiff, glass packing containers, rather than glass vases used for decoration, are "the group of goods that are commercially fungible with" the vases at issue. *Aromont*, 671 F.3d at 1312 (citation and internal quotation marks omitted).

---

[11]     Dependable is correct that if the vases are classifiable under this heading, they are unclassifiable under Heading 7013 by operation of the language in Heading 7013 excepting articles classifiable in Heading 7010. *See Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1429 (Fed. Cir. 1997). That observation, however, means little here. Such "other than that of heading" provisions in the tariff schedule obviate the need to apply GRI 2 to determine under which of two competing headings an article is properly classified. These provisions, however, play no role in construing competing principal use provisions for the simple reason that an article can have only one principal use. Once that principal use is determined, only one of the competing headings can possibly cover the merchandise.

*B. Heading 7013*

HTSUS 7013 covers "[g]lassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018)." Vases[12] are specifically identified in the Explanatory Notes to section 7013 as exemplary of items of glass used for indoor decoration that fall under this heading. Explanatory Notes 70.13 ("This heading covers . . . [g]lassware for indoor decoration and other glassware . . . such as vases."). As a matter of law, then, this heading properly covers items of glass which meet the common meaning of "vase" and are primarily used for decorative purposes.

Although plaintiff has avoided use of the term "vase" in its moving and responsive papers, the company identified the merchandise as vases on its entry documents. Further, an examination of the merchandise confirms that there can be no genuine factual dispute that the articles are vases. *See Peerless Clothing Int'l., Inc. v. United States*, 33 CIT ___, ___, 602 F. Supp. 2d 1309, 1315 (2009) ("An issue of fact is to be considered 'genuine' when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Anderson*, 477 U.S. at 248); *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.") (citation and internal quotation marks omitted).

---

12      The word "vase" is defined by the American Heritage Dictionary of the English Language as "An open container, as of glass or porcelain, used for holding flowers or for ornamentation" and by Merriam-Webster's Online Dictionary as "a usually round vessel of greater depth than width used chiefly as an ornament or for holding flowers." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1904 (4th ed. 2000); MERRIAM-WEBSTER'S ONLINE DICTIONARY, Vase, *available at* http://www.merriam-webster.com/dictionary/vase (last visited Feb. 5, 2013); *see also* OXFORD ENGLISH DICTIONARY (2d ed. 1989) ("A vessel, usually of an ornamental character, commonly of a circular section and made either of earthenware or metal, but varying greatly in actual form and use.")

Importantly, in addition to identifying the merchandise as vases on its entry documents, the goods are advertised as vases on plaintiff's website (Def.'s Mot., Ex. D (ECF Dkt. No. 25-8, at 24–25)), referred to as vases by plaintiff in its interrogatory responses (*e.g.*, Pl.'s Resp. to Interrog. & Req. 6–10 (ECF Dkt. No. 25-5, at 10–14)), referred to by plaintiff's employee as vases in his deposition testimony (*e.g.,* Grandio Dep. 9:15–9:21, 29:12–29:15, 35:3–35:9), and the court's inspection of the samples attests that they are vases.

In its papers, the Government argues that the principal use of Dependable's vases is as decoration because Dependable's vases are commercially fungible with other, physically similar, glass vases that are sold empty at retail.

## III.     The Principal Use of the Vases

*A.      The* Carborundum *Factors*

Application of the *Carborundum* Factors demonstrates that Dependable's vases are commercially fungible with other clear glass vases that are primarily used for decorative purposes.

*The General Physical Characteristics of the Merchandise*

The first *Carborundum* Factor, "the general physical characteristics of the merchandise," shows that the vases are commercially fungible with other clear glass vases that are sold empty at retail and are used for decorative purposes. First, the record contains photographic evidence of vases, identical to plaintiff's in all material respects, offered for sale empty at retail, both on the shelves of stores and via the internet in bulk. Rozanski Decl., Ex. 2 (ECF Dkt. No. 25-9, at 25, 27–30); Ex. 3 (ECF Dkt. No. 25-9, at 3); Ex. 5 (ECF Dkt. No. 25-9, at 39, 41–42, 49–52, 54). The design features of the vases that Dependable points to as indicating use as a packing material

(narrow waists, long necks, small openings, inexpensive glass) are apparent in these other, virtually identical vases as well, indicating that the vases at issue here are commercially fungible with these other similarly priced vases that are sold empty at retail for decorative purposes. *See* Pl.'s Br. 12–13. Moreover, the record reflects that the designs of Dependable's vases are not new or unique to Dependable. Grandio Dep. 37:7–37:17 ("The trumpet, I designed that approximately [10 years before starting at Dependable]"; "The bud vase has been around forever.").

*The Expectations of the Ultimate Purchasers*

The second *Carborundum* Factor, "the expectations of the ultimate purchasers" also favors the conclusion that the vases are primarily used for decorative purposes. First, the record contains evidence that the retail purchaser pays extra for the pairing of flowers and vase when compared to the cost of flowers alone.[13] Grandio Dep. 47:17–47:22 ("Q. . . . You take the exact same bouquet of roses, you buy it out of the bucket without a vase, it's less expensive than the bouquet in the vase[?] A. Yes. It's less cost for transport and product obviously.") Thus, the consumer is willing to pay more for the combination of the products (flowers plus vase) than for the flowers alone. The added cost to the price of the flowers in combination with the vase is probative, indicating that the "acquisition of the [vases] was [not] incidental" to the purchase of the flowers, as packing containers are generally expected to be. *Automatic Plastic Molding*, 26 CIT at 1208 (citation and internal quotation marks omitted). It is apparent, then, that the

---

[13] At oral argument, Dependable took the position that the "ultimate purchaser" of the vases for *Carborundum* Factor purposes was not the retail purchaser, but packing houses who are Dependable's clients. Case law, however, makes clear that it is the retail consumer who is the "ultimate purchaser" when examining this factor. *See, e.g., Automatic Plastic Molding*, 26 CIT at 1208 (evaluating the expectations of the retail purchaser of a glass container as the "ultimate purchaser", not the wholesale packer); *Kraft*, 16 CIT at 489 (evaluating the expectations of the retail purchaser of packed food items).

purchaser is willing to pay something to obtain the vase and that the purchaser only does so in order to use the vase to display the flowers.

Next, although there is some disagreement on the record as to whether the vases are frequently reused, it is undisputed that the vases are capable of reuse and that the ultimate purchaser would have the option to do so "based on personal preference." Grandio Dep. 40:10–40:18. Indeed, despite arguing that the vases are used only for transport from the point of retail purchase to the home or office of the ultimate purchaser and then typically discarded, Dependable has offered no studies, testimony of consumers, or other objective evidence of the behavior of final purchasers to support this proposition. Grandio Dep. 41:11–41:13 ("Q. Are you aware of how any particular consumer uses the vase once they purchase it? A. No."). That the vases are not of the finest quality is not probative on this point, as other nearly identical empty vases are sold without flowers at retail.

Therefore, the undisputed record evidence indicates that the retail purchaser buys the vases for decorative purposes.

*The Channels of Trade in Which the Merchandise Moves*

The third factor, "the channels of trade in which the merchandise moves," is not particularly probative. As has been noted, the vases are imported empty, sold to a packer who fills them with flowers, and then resold to a retailer. The weight of these facts as evidence that the vases are principally used for the conveyance or packing of goods, however, is minimal. This is because the record is clear that similar vases are sold unpacked at retail to be filled with flowers by their purchasers. In other words, the movement of the vases in trade merely suggests that Dependable's vases travel in an atypical manner to the final purchasers who employ them in a typical manner.

*The Environment of Sale*

Fourth, "the environment of sale" of the vases is also probative of a decorative purpose. The vases are displayed for sale to consumers packed with flowers, encouraging the retail customer to purchase both flowers and the vase for their combined decorative value. Moreover, Dependable's own advertising brochure places vases in a separate "floral" section, depicting both packed and unpacked vases. Def.'s Mot., Ex. B (ECF Dkt. 25-3, at 7, 8, 24.)

*Use in the Same Manner Which Defines the Class*

Fifth, the actual use or "use in the same manner which defines the class," favors classification with other glass vases primarily used for decorative purposes. Although plaintiff's vases are never sold empty at retail, indicating that they have some value as packing materials, the vases ultimate use, consistent with the manner in which other similar inexpensive glass vases are used, is decorative. It is also undisputed that the vases are displayed filled with flowers at the point of sale, command a higher price than either the vase or the flowers individually, that retail purchasers can display the accompanying flowers in the vases and reuse the vases to display later purchased flowers, all of which evidence a decorative purpose. Grandio Dep. 42:4–42:6 ("Q. So then would you say the vases aid in the sale of the flowers? A. Yes."); Compl. ¶ 31 ("The design of Dependable's glass containers are decorative in nature and aid in the sale of the flowers."). Moreover, where the "physical characteristics" factor so strongly favors one principal use, the actual use of an imported article will frequently not be controlling. *See Primal Lite*, 182 F.3d 1362, 1346 (1999) ("[A] classification covering vehicles principally used for automobile racing would cover a race car, even if the particular imported car was actually used solely in an advertising display.").

*Economic Practicality of the Specified Use*

There is no admissible evidence on the record that the vases' use as packing containers is economically practical. Plaintiff argues that wet packing the flowers using the vases—a process that entails packing the vase with flowers and liquid, placing the filled vase in a plastic sleeve, placing the plastic sleeve in a partitioned box, and then covering the box with an additional plastic liner—is economically feasible because the end retailers need not employ florists, and thus wet packing saves them labor costs. The only evidence on the record for this proposition, however, are the interrogatory responses signed by Mr. Grandio and the deposition testimony of Mr. Grandio in which he states that his knowledge of this information is from having spoken to "random people" employed by a Miami supermarket. Grandio Dep. 83:13–85:5. As such, the assertion that wet packing saves labor costs is really that of the supermarket employees to whom Mr. Grandio apparently spoke, not that of Mr. Grandio himself, and is offered for the truth of the out of court assertion that wet packing saves labor costs. As a consequence, Mr. Grandio's testimony on this point is not based on personal knowledge and is derivative of inadmissible hearsay. Thus, it is not evidence upon which summary judgment can be either granted or denied. *See* Fed. R. Evid. 801(c), 802 (defining hearsay and indicating its general exclusion); Fed. R. Evid. 602 (requiring that witnesses have personal knowledge of the facts to which they testify).

There is, however, record evidence indicating that the use of plaintiff's vases in the same manner as other inexpensive glass vases is economically feasible (i.e., that empty vases could be sold profitably at retail). First, the pricing of Dependable's vases is compatible with the advertised retail prices of similar vases. In a sales e-mail produced by Dependable, and which was sent by Dependable employee Ross Borer to a potential customer, the pre-shipping price of the bud vases was quoted at "$.12–.125 FOB China per unit in clear" with a "[l]anded cost

[of] .225–.235" and the trumpet vases at "$.34 FOB China per unit in clear" with a "[l]anded cost [of] .615–.628." Def.'s Mot., Ex. B (ECF Dkt. No. 25-4 at 10). Dependable's invoices similarly reflect a unit price for the bud vases of between $0.30–.31 and $0.72 for the trumpet vases. Def.'s Mot. ., Ex. B (ECF Dkt. No. 25-4 at 12, 14).

Next, evidence on the record shows that similar glass vases are sold empty at retail for between $1 and $3.20 per unit. Rozanski Decl., Ex. 2 (ECF Dkt. No. 25-9, at 23–30); Ex. 3 (ECF Dkt. No. 25-9, at 32–33). Dependable's vases, therefore, could be sold profitably at retail when empty, as other similar vases are. Indeed, Mr. Grandio testified that there is a retail market for similar vases. Grandio Dep. 95:4–95:8 ("Q. . . . This particular utility vase that [D]ependable sells is not sold at retail. Is that correct? A. What we sell is not for retail. We might have competition, Syndicate Sales. That is their specialty. They sell vases to [be resold at] retail.").

Thus, the record contains evidence of the commercial practicability of selling Dependable's vases in a manner consistent with that of other similar glass vases sold empty at retail, and there is no admissible evidence of the commercial practicability of using the vases as a packing container. Accordingly, this factor supports classification of the plaintiff's vases with other similar inexpensive glass vases sold empty at retail.

*Recognition in the Trade of the Specified Use*

Finally, the factor of "recognition in the trade of this use" is not very probative. The only record evidence as to trade recognition of the vases being used to convey goods as packaging is Mr. Grandio's testimony that wet packing with "utility vases" is an accepted trade practice within the "mass market floral [industry]." Grandio Dep. 96:3–96:6. Close examination of Mr. Grandio's testimony indicates, however, that "mass market floral [industry]" means "[s]upermarkets and the vases in question which are our vases." Grandio Dep. 96:3–96:10. In

other words, the "industry" referred to is limited to the actual use of Dependable's vases by its customers, rather than connoting any broad commercial meaning or industry practice. Grandio Dep. 38:22–39:4 ("Q. Is that a term of art, utility vase? A. Of art, no. Q. Is it something used in the industry, that term "utility vase"? A. They usually use utility vase as cheap."). Indeed, there is significant record evidence that vases virtually indistinguishable from Dependable's product are sold empty at retail to customers for decorative purposes. Rozanski Decl., Ex. 2 (ECF Dkt. No. 25-9, at 23–30); Ex. 3 (ECF Dkt. No. 25-9, at 32–54).

### B. The Court's Examination of the Articles

The court has undertaken an examination of the samples of the bud vase and trumpet vase provided by the parties. *Simod*, 872 F.2d at 1578 ("[T]he merchandise itself is often a potent witness in classification cases."). To the court's eyes, Dependable's vases are indistinguishable from the other inexpensive clear glass vases depicted in the record, which are indisputably sold empty at retail and used for decorative purposes. *See* appendix *infra*.

### C. The Vases' Principal Use is Decorative

In sum, based on the foregoing analysis of the *Carborundum* Factors—in particular the very weighty factor of the relevant physical characteristics of the vases—a reasonable jury could only conclude that the vases here are commercially fungible with other inexpensive clear glass vases whose principal use is decorative, rather than with glass packing containers. As such, the vases are not classifiable under Heading 7010, i.e., no reasonable jury could conclude that they are principally "used for the conveyance or packing of goods." Accordingly, Customs' classification of the vases under Heading 7013 was correct, as the vases are articles of glass which a reasonable jury could conclude are principally "used for table, kitchen, toilet, office, indoor decoration or similar purposes." Given the vases' respective values and the lack of any

other appropriate subheadings under Heading 7013, Customs' selection of subheadings

7013.99.40 and 7013.99.50 was also correct.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that defendant's Motion for Summary Judgment is GRANTED, plaintiff's

Cross-Motion for Summary Judgment is DENIED, and the case is dismissed.

/s/ Richard K. Eaton
Richard K. Eaton

Dated: February 20, 2013
      New York, New York



Trumpet Vase



Budvases

## UNITED STATES COURT OF INTERNATIONAL TRADE

DEPENDABLE PACKAGING
SOLUTIONS, INC.,

       Plaintiff,

          v.

UNITED STATES,

       Defendant.

Before: Richard K. Eaton, Judge

Court No. 10-00330

## JUDGMENT

Upon consideration of the papers and proceedings had herein, and in conformity with the court's decision in this matter, it is hereby

ORDERED that the defendant's Motion for Summary Judgment is GRANTED, plaintiff's Cross-Motion for Summary Judgment is DENIED, and the case is dismissed.

                                    /s/ Richard K. Eaton
                                      Richard K. Eaton

Dated: February 20, 2013
       New York, New York





m-w.com

Quizzes & Games　　Word of the Day　　Video　　New Words　　My Favorites　　

**vase**

# vase



**Name That Thing**
Take Our 10-Question Quiz

7 ENTRIES FOUND:

Popularity

vase

vase clock

vase rug

Vase is currently in the **bottom 50%** of lookups on Merriam-Webster.com.

See a list of the most popular words.

*Ads by Google*
**Switch to TD Ameritrade**
No Platform Fees or Minimum Trade Requirements. Open an Account Now!
TDAmeritrade.com

**vase** 　*noun*　\US oftenest 'vās; *Canada usually &*
*US also* 'vāz; *British usually, Canada also, & US*
*sometimes* 'väz\

**Definition of VASE**

: a usually round vessel of greater depth than width used
chiefly as an ornament or for holding flowers

— **vase-like** 　*adjective*

See vase defined for English-language learners »
See vase defined for kids »

**Origin of VASE**

French, from Latin *vas* vessel

First Known Use: 1629

**Other Household Terms**

cruet, curiosity, duvet, fiasco, sham, taper, valance, whatnot

**Rhymes with VASE**

ace, base, bass, brace, case, chase, dace, face, grace, lace,
mace, Mace, Naas, pace, place, plaice, prase, race, res,
space, Thrace, trace, Wace

**Learn More About VASE**

Spanish-English Dictionary: Translation of "vase"
Britannica.com: Encyclopedia article about "vase"

**Browse**

Next Word in the Dictionary: vase clock
Previous Word in the Dictionary: vas deferens
All Words Near: vase

---

**MORE QUIZZES**



**Spell It**
The commonly misspelled words quiz
Hear It, Spell It »



**Name That Thing**
Take our visual vocab quiz
Test Your Knowledge »

**Seen & Heard: Nine Conflicts and
One Compliment**
Favorite "Seen & Heard" Comments

**A Thoughtful Guide to Words
About Nonsense**
Buffoonery, Codswallop & More

**STAY CONNECTED**



**Get Our Free Apps**
Voice Search, Favorites,
Word of the Day, and More
iPhone | iPad | Android | More



**Join Us on FB & Twitter**
Get the Word of the Day and More
Facebook | Twitter

---

**Certified Service**

Expert care.
Trained above and
beyond.

LEARN MORE

Koons Tysons Chevy
Buick GMC
2000 Chain Bridge Rd
Vienna, VA 22182

GMC

**❝ Seen & Heard ❞**



What made you want to look up *vase*? **Please** tell us where you
read or heard it (including the quote, if possible).

ℹ️ Internet Explorer cannot display the webpage

Most likely causes:
- You are not connected to the Internet.
- The website is encountering problems.
- There might be a typing error in the address.

**View Seen & Heard highlights from around the site »**

Merriam-Webster on Facebook

### The Merriam-Webster
### Unabridged Dictionary



Online access to a
legendary resource
Log In or Sign Up »

### Learning English?
### We can help.



Visit our free site designed
especially for learners and
teachers of English
LearnersDictionary.com »



### Our Dictionary,
### On Your Devices

Merriam-Webster,
*With Voice Search*
Get the Free Apps! »

### Merriam-Webster's
### Visual Dictionary



The new edition of the
remarkable reference
features 8,000
illustrations.
Learn More »



DESIGN — Ai The Art Institutes · CREATE TOMORROW — LEARN MORE ►

### Join Us

Merriam-Webster Merriam-Webster
on Twitter »     on Facebook »

### Bookstore: Digital and Print

Merriam-Webster references for Mobile,
Kindle, print, and more. See all »

### Other Merriam-Webster Dictionaries

Webster's Unabridged Dictionary »     Learner's ESL Dictionary »
WordCentral for Kids »                Visual Dictionary »

Home   Help   About Us   Shop   Advertising Info   Dictionary API

Privacy Policy   About Our Ads   Contact Us   Browser Tools

© 2013 Merriam-Webster, Incorporated

Browse the Dictionary

Browse the Thesaurus

Browse the Spanish-English Dictionary

Browse the Medical Dictionary

Browse the Concise Encyclopedia